MORSE, Executor, Appellant, *v.* KROGER et al., Respondents.

(No. 6,544.)

(Submitted December 2, 1929. Decided February 28, 1930.)

[285 Pac. 185.]

*Mr. W. E. Moore,* for Appellant.

*Mr. L. A. Foot,* Attorney General, *Mr. C. N. Davidson,* Assistant Attorney General, and *Mr. D. M. Durfee,* County Attorney of Granite County, for Respondents.

MR. JUSTICE FORD delivered the opinion of the court.

This action was commenced by plaintiff, as executor of the estate of G. W. Morse, deceased, to restrain defendants from issuing a tax deed to certain real estate situated in the city of Philipsburg and to cancel and annul a certificate of tax sale issued to Granite county on January 27, 1922.

It appears from the record, that, in 1921, G. W. Morse was the owner of the property in question, consisting of thirty-nine town lots constituting fifteen separate and distinct parcels of real estate; that the lots were separately assessed and the assessments duly entered upon the assessment-roll of Granite county; that the taxes were not computed upon each lot but that the valuations of the several lots were added together and the tax computed and carried out upon the aggregate sum; that the taxes were not paid, and thereafter the county treasurer caused to be published a delinquent tax list, in which the property in question was described by lot and block, and showing the total amount of taxes upon the lots in gross, including general state and county, together with general taxes for the city of Philipsburg; that thereafter upon the date of sale and pursuant to the notice above referred to, the county treasurer "struck off" all of the lots *en masse* to Granite county for $67.87 and a certificate of tax sale issued; that thereafter during the years 1922 to 1927, inclusive, taxes were levied in like manner and, in addition to the general levy during the years 1923 to 1927, inclusive, there was levied upon and against the property a certain special improvement tax.

The complaint alleges that the general city taxes for each of the years were and are illegal and void for the reason that the levies "were not made by any proper resolution or order of its board of aldermen, or if so made by said authorities, not any authenticated or proved or certified copy of any such resolution or order making a levy for either or any of said years was ever delivered to or placed in the hands of the county clerk and recorder or the county treasurer as the basis or authority for the extension of any of the levies, if any were ever made, for the taxes for the city of Philipsburg, or for the extension or carrying out of any municipal or city tax"; that the special improvement taxes are illegal and void in that the improvement district "was never properly established or created as provided by law and particularly in this, that no final resolution assessing or apportioning the tax to the different tracts of real estate in said district was ever made or passed or ratified by the said city council or board of aldermen, and no copy of any such resolution was ever certified to or proved and filed in the office of the county clerk and recorder," and further, that the total amount of taxes on account of such special improvement is listed and carried out on the assessment-roll against all of the lots; that defendant Granite county has given notice of its intention to apply for a tax deed; that the notice does not state the amount of taxes for the year 1921, being the taxes for the year for which the property was sold for delinquent taxes, and does not give the amount of delinquent taxes for each of the subsequent years, "nor does said notice state or give the kind of taxes, whether state or county or municipal taxes * * * for each or any or either of the said years of 1921 to and including 1927."

The material allegations of the complaint are denied by answer. The cause was tried to the court, which found in favor of defendants. Judgment was accordingly entered, and plaintiff appeals.

It is insisted by counsel for plaintiff that the method employed by the county clerk in computing the tax was contrary

to the express provisions of section 2160, Revised Codes of 1921, and rendered the taxes illegal and the tax certificate a nullity.

Under our statutes, as soon as the county clerk receives from the state board of equalization a statement of the changes made by the board in the assessment-book of the county, or the assessment contained therein, he must make the corresponding changes in the assessment-book. (Sec. 2159, Rev. Codes 1921.) "The county clerk must then compute, and enter in a separate money column in the assessment-book, the respective sums in dollars and cents, * * * to be paid as a tax on the property therein enumerated, and foot up the column showing the total amount of such taxes, and the columns of total value of property in the county, as corrected under the direction of the state board of equalization." (Sec. 2160, Id.) We think the section quoted contemplates that the tax shall be computed upon each lot based upon the assessed valuation. The county clerk did not perform the duty in the manner required, but the assessed values of the separate lots were added together and the tax computed upon the aggregate value of all the lots. This does not render the tax illegal or void. The work of the county clerk in computing and entering the tax, as required by this section, is not a part of the levy and assessment of the taxes (24 Cal. Jur., p. 211; *Waterhouse* v. *Clatsop County*, 50 Or. 176, 91 Pac. 1083); it is merely a step in the method of their collection—a purely ministerial function. (*Palomares Co.* v. *Los Angeles County*, 146 Cal. 530, 80 Pac. 931; *People's Water Co.* v. *Boromeo*, 31 Cal. App. 270, 160 Pac. 574; *School District* v. *School District*, 80 Kan. 641, 103 Pac. 126; *State* v. *Erickson*, 170 Wis. 205, 174 N. W. 919.) The rule that tax proceedings are *stricti juris* and must be strictly complied with, does not apply with the same degree of strictness to the acts of the county clerk in the discharge of this ministerial duty as to the proceedings for the assessment and levy of the tax. (24 Cal. Jur. 211.) This being true, we are of the opinion that the method of computing the taxes employed did not render the tax invalid.

Counsel insists that the taxes levied for general purposes for the city of Philipsburg are void and do not constitute valid taxes or liens against the lots, or any of them, for the reason that not any authenticated or proved copy of the resolution fixing the levy adopted by the city council of Philipsburg for each of the years in question was ever delivered to or placed in the hands of the county clerk as the basis for the computation and extension of the municipal tax.

Section 5216, Revised Codes of 1921, reads: "The council must * * * , by resolution, determine the amount of city or town taxes for all purposes, to be levied and assessed on the taxable property in the city or town for the current fiscal year, and the city clerk must at once certify to the county clerk a copy of such resolution, and the county treasurer must collect the taxes as in this chapter provided." The resolutions filed with the county clerk and relied upon by defendants as filling this requirement are purported copies of the resolutions passed by the city council, indorsed or signed: "Attest: A. R. McDonald, City Clerk." Attest is "to certify; to affirm to be true or genuine" (Webster's New Internat. Dictionary) ; "to certify as accurate, genuine or true." (Funk and Wagnall's New Standard Dictionary; see, also, *In re Lockhart,* 72 Mont. 136, 144, 232 Pac. 183.) It follows that when the city clerk subscribed his official attestation to the purported copies of the resolutions—records in his official custody—he to all intents and purposes affirmed or certified to their correctness. "The purpose of all laws, which must be administered by persons ignorant of legal forms and language, would be defeated, if they were held to great strictness and accuracy in their forms of expression." (*Cooper* v. *Nelson,* 38 Iowa, 440.)

The numerous questions presented and relied upon by plaintiff affecting the 1921 taxes are at most, irregularities, and these were cured by Chapter 46, Laws of 1923, which says: "All certificates of sale heretofore issued to any county on the purchase by such county of real property sold at any delinquent tax sale and which certificates of sale are now held by such county, are hereby declared to be valid and subsisting

certificates of sale for all purposes, notwithstanding any irregularities in the manner of publishing the delinquent tax list, or in holding such sale, or in selling such property or in the issuance of such certificates of sale, or in the form thereof, provided the taxes for which such property was sold were taxes authorized by law to be assessed against such property, and were lawfully assessed against the same and have not been paid.''

The 1921 taxes were regularly levied; there was a substantial compliance with the statutes relative to notice and sale, and in consequence the certificates of tax sales are valid and not open to attack.

Was the cost of the special improvement for sidewalks apportioned and the taxes levied in compliance with the provisions of the statute? Apparently the proceedings creating the district and awarding the contracts were regular, at least no question as to them is raised; but it is contended that the city council wholly failed to adopt a resolution apportioning the cost and levying and assessing the tax upon the property within the district as required by section 5240, Revised Codes of 1921, and that no notice was given to the property owners as required by section 5241, Id.

Under the provisions of section 5240, supra, after the award of the contracts for the improvement, ''the city council shall by resolution levy and assess a tax upon all property in any district created for such purpose,'' by using one of the methods set forth in section 5238; ''such resolutions shall contain a description of each lot and parcel of land, with the name of the owner, if known, and the amount of each partial payment to be made, and the date when the same shall become delinquent.'' The payment of assessments in equal installments may be spread over a term not exceeding twenty years. Section 5241, supra, says: ''Such resolution, signed by the mayor and clerk, shall be kept on file in the office of the city clerk, and a notice signed by the city clerk stating that the resolution levying the special assessment to defray the cost of such improvements is on file in his office, subject to inspec-

tion for a period of five days, shall be published at least once in a newspaper published in the city or town. Such notice shall state the time and place at which objections to the final adoption of such resolution will be heard by the council, and the time for such hearing shall not be less than five days after the publication of such notice. At the time so fixed the council shall meet and hear all such objections, and for that purpose may adjourn from day to day, and may, by resolution, modify such assessment in whole or in part. A copy of such resolution, certified by the city clerk, must be delivered to the city treasurer within two days after its passage."

The record affirmatively shows that the resolution provided for by section 5240 was not adopted by the city council, and the notice required by section 5241 was not given to the property owners. How, and by whom, the apportionment of the cost of the improvements was made, and the tax levied and assessed, does not appear. We are of the opinion that, in the absence of such a resolution and notice to the property owners, the pretended levy and assessment of a tax upon the property within the district is illegal and void.

It is uniformly held that a municipal corporation has no inherent power to levy and collect special assessments to defray the expense of improvements of the nature under consideration, and since the exercise of such power is in derogation of the rights of private property, the law granting such power should be strictly construed. (5 McQuillin on Municipal Corporations, sec. 2171; *Town of Mill Valley* v. *Massachusetts Bonding Co.*, 68 Cal. App. 372, 229 Pac. 891; *Anderson* v. *City of Ocala*, 83 Fla. 344, 91 South. 182; *Wilt* v. *Bueter*, 186 Ind. 98, 111 N. E. 926, 115 N. E. 49; *Chicago Great W. Ry. Co.* v. *City of Council Bluffs*, 176 Iowa, 247, 157 N. W. 947; *Boynton* v. *Board*, 54 N. D. 795, 211 N. W. 441; *City of Kirkwood* v. *Martin*, 219 Mo. App. 490, 282 S. W. 542.) And only the officer or board "designated by the law applicable is authorized to take the essential steps and make assessment. The state legislature sometimes confers power to make assessments for local improvements on a designated

board, but usually the legislative body of the municipality is authorized to make them. When the statute or charter so provides, it is imperative that the municipal council should make the assessment, as the authority cannot be delegated by it." (5 McQuillin on Municipal Corporations, sec. 2222.) "Before the special assessments can be charged upon the property of private persons, the owners must be given notice thereof, with an opportunity to be heard and to contest, if desired, the validity and fairness of the assessment, and failure to give such notice and hearing, it is usually held, will render an assessment void whether or not notice is expressly required by law." (Id., sec. 2226; 44 C. J. 623.) "It has always been the general rule in this country, in every system of assessment and taxation, to give the person to be assessed an opportunity to be heard at some stage of the proceeding. That 'due process of law' requires this has been quite uniformly recognized." (*In re Sewer in Kissel Ave.*, 81 Misc. Rep. 541, 143 N. Y. Supp. 467, 471; 44 C. J. 626 and cases cited.) "All statutory requirements as to the form and contents of an assessment must be substantially complied with, as they are regarded as mandatory and jurisdictional." (44 C. J. 672.) And it is likewise held that the apportionment of the cost of a special improvement is essential to the validity of the assessment therefor. An apportionment not made in conformity to the applicable law is void. (5 McQuillin on Municipal Corporations, sec. 2239.)

The property was lawfully sold in January, 1922, for the taxes levied and assessed in 1921, and the county was entitled to a deed after the expiration of three years, upon giving the requisite notice, in the absence of a redemption. When property has been sold for delinquent taxes and subsequently assessed as required by section 2231, Revised Codes of 1921, "no person must be permitted to redeem from said sale, except upon payment also of the amount of such subsequent assessment, costs, fees, and interest." (Sec. 2233, Id.) Section 2209, Id., specifies how notice of application for a tax deed shall be given and what it shall contain; it must give "the

date of sale, the amount of property sold, the amount for which it was sold, the amount due, and the time when the right of redemption will expire, * * * and the owner of the property * * * has the right of redemption indefinitely until such notice has been given and the deed applied for, upon the payment of fees, percentages, penalties and costs required by law." This section expressly requires that the notice shall state the *amount due*, and necessarily means the correct amount. (*Hinz* v. *Musselshell County*, 82 Mont. 502, 267 Pac. 1113; *Tilden* v. *Chouteau County*, 85 Mont. 398, 279 Pac. 231.)

Since the "sidewalk tax" was not levied and assessed as ▉ required by law and did not constitute a lien against the property, the inclusion of these sums in the notice of application for tax deed was fatal and rendered the notice invalid.

Defendants have filed herein a motion to dismiss the appeal, from which it appears that after entry of the judgment appealed from, Granite county made a new application for tax deed and gave notice thereof as required by section 2209, supra, and thereafter a tax deed was issued covering the property in controversy. It is argued that since the tax deed has been issued, the questions presented by this appeal have become and are moot.

An examination of the application for tax deed, a copy of which is attached to the motion to dismiss, discloses "that the grand total due on May 15, 1929, will be $1,016.68"; this amount includes the sidewalk taxes for all of the years involved in the controversy. Thus it appears that the second notice of application, upon which the tax deed is based, is fatally defective, and the questions presented are not moot but are vital to the validity of the deed.

Accordingly, the motion to dismiss the appeal must be denied and the judgment reversed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Galen and Angstman concur.