THOMPSON ET AL., APPELLANTS, *v.* LINCOLN NATIONAL LIFE INSURANCE CO., RESPONDENT.

(No. 8,053.)

(Submitted April 26, 1940.   Decided June 25, 1940.)

[105 Pac. (2d) 683.]

522

*Messrs. Murch & Wuerthner*, for Appellants, submitted a brief; *Mr. Clarence W. Murch* argued the cause orally.

*Messrs. Speer & Hoffman*, for Respondent, submitted a brief; *Mr. Harvey B. Hoffman* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an appeal from a judgment entered by default in favor of the defendant. The default was taken after the defendant's demurrer to the complaint was sustained, and the plaintiff failed to plead further. The basis of the appeal is that

the complaint states a cause of action and the demurrer should have been overruled.

The allegations in the complaint show that on the 30th day of July, 1926, S. E. Brokaw, deceased, entered into a written agreement with the Northern State Life Insurance Company for the purchase of certain land in the county of Teton. Later, and prior to May 23, 1933, the defendant Lincoln National Life Insurance Company took over the assets of the Northern States Life Insurance Company. On the 26th day of January, 1931, the plaintiffs herein qualified as administratrices of the estate of Brokaw. On the 20th day of September, 1934, the plaintiffs tendered the deferred payments and interest due under the contract and demanded a conveyance. On the 26th of November the defendant sold and conveyed the land to one Luinstra. There are further allegations to the effect that the full sum of the contract was $3,000, and that $2,404.38 had been paid during the lifetime of the deceased Brokaw. The claim for damages includes the amount paid by Brokaw.

The contract, which is made a part of the complaint, provided for the payment of $500 at the execution of the contract, and $500 at or before the first day of November of the years 1927, 1928, 1929, 1930 and 1931. It further appears from the contract that in case Brokaw failed to make any of the above payments or of interest, then the whole amount should become due and ''this contract shall, at the option of the party of the first part [insurance company], be forfeited and determined by giving to the second party [Brokaw] 30 days' notice in writing, of the intention of the first party to cancel and determine this contract, setting forth in said notice the amount due upon said contract, and the time and place when and where payment can be made by said second party.''

It is the above-quoted provision of the contract which is involved in this appeal. The plaintiffs allege that no notice was given pursuant to this provision, that the contract was in full force and effect at the time they made their tender of payment, and that, therefore the breach was on the part of the

insurance company when it refused to convey title and later conveyed the land to another.

The defendant, by demurring and for the purpose of testing the pleadings, admits that no notice was given but contends that the contract was at an end at the time of the failure to make the last payment. The question before us is whether, under the allegations presented by the pleadings, the contract was in full force on September 20, 1934, when the tender and offer of performance was made by the plaintiffs.

In the case of *Suburban Homes Co.* v. *North,* 50 Mont. 108, 145 Pac. 2, Ann. Cas. 1917C, 81, a problem similar to the one here was presented to this court. In that case a contract involved the sale of real estate and contained a provision that upon default by the vendee to pay any installment, the vendor might at its option declare the contract null and void. Another provision made time of the essence of the contract. Another provided that a declaration of the intention to declare null and void should be mailed to the vendee. The suit by the vendor was for the cancellation of the contract. In holding that the vendor was entitled to cancellation, Mr. Chief Justice Brantly, speaking for the court, said:

"Although by its express terms time is made of the essence of the contract, and an option is reserved by the vendor to declare it terminated for failure to pay the purchase price at the date it falls due, or, if it is payable in installments, at the date that any one of the installments falls due, this provision may be waived by a failure to exercise the option, or by accepting a payment after it is due. The vendor cannot thereafter allege such default as a ground for declaring the contract terminated. (Pomeroy on Contracts, sec. 357; 2 Warvelle on Vendors, sec. 820; *Grigg* v. *Landis,* 21 N. J. Eq. 494; *Boone* v. *Templeman,* 158 Cal. 290, 139 Am. St. Rep. 126, 110 Pac. 947.) If payment is to be made in installments, default in the payment of any installment is a distinct breach and gives the vendor the right to declare a forfeiture. The right must be promptly exercised, however; otherwise, the right being exclusively that of the plaintiff, he will be presumed to regard the contract as

still valid and existent." To a like effect is the holding in *Hammond-Dodson* v. *Slattery,* 67 Mont. 489, 216 Pac. 323, and *Fratt* v. *Daniels-Jones Co.,* 47 Mont. 487, 133 Pac. 700.

We think the question in the case at bar is answered by the ▮▮▮▮ above decisions of this court. Even though time is expressly made of the essence of a contract, yet the provision requiring notice of termination qualifies its operation. When a notice is required by the terms of the contract, such notice is essential to the exercise of an option for its termination. (17 C. J. S. 892.) It is alleged in the action at bar that notice was not given, and that the contract was in full force when the plaintiffs made a tender of the amount due, and that when the defendant failed and refused to perform the contract and convey title to them, they were entitled to treat the contract as breached and demand recovery of the amounts paid in accordance with the provision of section 8672, Revised Codes.

The defendant contends that the complaint was insufficient in that the exact amount tendered by the plaintiffs when they demanded conveyance, was not set out in the complaint. The words used by the plaintiffs were: "tendered to the said defendant the balance of the deferred payments and interest due on said contract." As authority for its contention the defendant cites 1 Bancroft on Code Pleading, section 334, in which the author in speaking of allegations in an answer states: "He must state the amount tendered, which must, of course, appear to be sufficient." The defendant also cites 62 C. J. 688, and the cases of *Proebstel* v. *Trout,* 60 Or. 145, 118 Pac. 551, and *Harrison* v. *Beals,* 111 Or. 563, 222 Pac. 728. The reason for this rule is stated in *Harding, Whitman & Co.* v. *York Knitting Mills,* 142 Fed. 228, 229, where the court said: "The averment of tender so made is clearly insufficient; the difficulty with it being that it gives no facts. As it stands, it is a mere conclusion, like an averment of payment, which, without more, is bad. * * * Tender is a mixed question, and the facts should be given in order that the court may see that as a matter of law it was good, to judge of which it is necessary to state how and to whom it was made, as well as the amount tendered, without which this cannot be known."

It would seem that under this complaint a reference to the ██ contract to determine the amounts to be paid, together with interest, and a reference to the allegation of the amount paid, it would be a simple mathematical calculation to give exactness to the tender. "That is certain which can be made certain." (Sec. 8767, Rev. Codes.)

While all of the facts essential to a determination of the amount due are alleged in the complaint, yet it is our opinion that recovery under the complaint could be had by virtue of the rule that a tender is unnecessary when to make such tender would be a useless act. (Sec. 7567, Rev. Codes; *O'Keefe* v. *Routledge*, ante, p. 138, 103 Pac. (2d) 307.) The allegations show that a second tender was made December 10, after a conveyance had been made by the defendant to Luinstra. Thus the conveyance to Luinstra was a definite act from which the plaintiffs were entitled to treat the contract as breached by the defendant. Under such circumstances a tender would not be necessary for recovery; hence, if a recovery can be had without tender being made, then it would be unnecessary to plead it. (Compare effect of sec. 10682, Rev. Codes.)

It is also argued that when the plaintiffs asked for and re-██ ceived additional time within which to file an amended complaint, they were bound by their election and could not, on appeal, stand on their complaint demurrer to which was sustained. A leading Montana case is cited—*State ex rel. Juckem* v. *District Court*, 57 Mont. 315, 188 Pac. 137. This case supports the view urged by the defendant. However, the holding in the Juckem case in this particular has been overruled by the language used by this court in *State ex rel. Crowley* v. *District Court*, 108 Mont. 89, 96, 88 Pac. (2d) 23, where it is said: "The first question involved in this proceeding is whether by obtaining the order petitioner waived his right to question the ruling on the demurrer. Defendants' contention is that when the demurrer was sustained, petitioner was required to elect whether to stand upon the amended complaint or to apply for leave to amend further; that by his application he obtained a right to amend which he did not have as a matter of course,

and that by so doing he elected his remedy. However, it is clear that he already had that right by virtue of Court Rule No. 6, which provided that upon the sustaining of a demurrer the adverse party should have 10 days in which to amend unless other time was fixed by the court. Under the rule the petitioner clearly had the right to amend further if he chose to do so. What he applied for and received was not the right to amend, but further time in which to exercise that right if he so desired.

"It seems well settled, and defendants concede, that where the right to amend is granted by statute there can be no election by which the litigant is estopped. Manifestly it is immaterial that the right was granted by general court rule rather than by statute. By his motion for additional time applicant made no election of remedy by which he is precluded from questioning the ruling on the demurrer. As a matter of fact, he has made an election just the reverse of that assumed by defendants. The mere making and granting of a request for time to amend, or even for leave to amend, cannot properly be held to constitute an election to follow that remedy, in view of the well-established rule in this and other jurisdictions that an election exists only where a remedy is pursued to a final conclusion. Here the petitioner did not further amend and thus pursue the remedy to a final conclusion. Defendants are in error in contending that when the demurrer was sustained, petitioner was required to elect whether to stand upon the amended complaint or to apply for leave to amend further. He was required to elect whether to stand upon the amended complaint or to amend further, and by this application he has elected to follow the first course."

The complaint is sufficient to state a cause of action, and the judgment is reversed and the cause remanded with instruction to overrule the demurrer.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ERICKSON and ARNOLD concur.

Rehearing denied September 24, 1940.