LESTER C. RADER AND MYRTLE B. RADER, PLAINTIFFS AND RESPONDENTS, v. GARVIN C. TAYLOR, DEFENDANT, AND FRANCES (FRANCIS) A. TAYLOR, DEFENDANT AND AP-PELLANT.

No. 9875.
333 Pac. (2d) 480.
Submitted Feb. 21, 1958. Decided Nov. 24, 1958.
Rehearing Denied Jan. 13, 1959.

420

H. B. Landoe and Joseph B. Gary, Bozeman, Burke, Hibbs & Sweeney, Billings, H. B. Landoe, Joseph B. Gary and R. F. Hibbs, argued orally, for appellant.

Loble & Picotte, and P. F. Hooks, Helena, Gene A. Picotte, argued orally for respondents.

MR. JUSTICE ANGSTMAN:

This action was brought by plaintiffs to obtain restitution of certain real property in Meagher County sold by plaintiffs to defendants under a contract for installment payments. Likewise plaintiffs sought an injunction enjoining and restraining the defendants from removing improvements and from cutting or removing trees and saw logs until the further order of the court.

The cause was originally set for trial on April 3, 1957, before the court without a jury. On that day defendant Frances A. Taylor tendered $58,000 in cash as settlement in full for all claims made by plaintiffs. This offer was rejected. Defendants then demanded a jury trial which was granted. The cause was then continued for trial until July 23. After the jury was selected and sworn the cause was continued for trial until July 24. At the opening of court on that day and before any evidence was introduced plaintiffs made a motion for judgment on the pleadings. Counsel for defendants again tendered full payment on reasonable notice in exchange for a deed. He also objected to the motion because of a want of notice thereof. The motion for judgment on the pleadings was sustained on that day.

Judgment in favor of the plaintiffs was entered accordingly. It is from this judgment that defendant Frances A. Taylor, has appealed. At the outset we are met with motions to dismiss the appeal for several reasons: The first of which is that the transcript was not timely filed. The facts with reference thereto are the following:

The judgment was rendered on August 1, 1957. Notice of appeal was filed on September 11, 1957. On the same day the appellant ordered a transcript of the judgment roll. On affi-

davit showing the necessity therefor an order was obtained from the trial judge on October 23 extending the time to file the transcript to December 11, 1957. The transcript on appeal was filed on December 5, 1957.

After the appeal had been taken to this court the district court no longer had authority to extend the time for the filing of a transcript on appeal.

However, the fact that appellant did obtain an order from the trial court purporting to extend the time may be considered in determining whether she was guilty of laches in preparing her transcript on appeal. Under our statute, section 93-8019, it is provided "that no appeal can be dismissed for any objections to the record * * * if the cause of such objection is removed by perfecting the record * * * to the satisfaction of the court, or a justice thereof, before the hearing of a motion to dismiss."

Likewise, subd. 2 of Rule VI of the rules of this court in part, provides: " * * * if it appear that the delay [in serving and filing the transcript] has been without laches on the part of appellant, his appeal will not be dismissed for such delay until reasonable time has been allowed for filing the record."

Subd. 3 of the same Rule provides, in part, as follows: "No appeal shall be dismissed for failure to file the record within the time required by these Rules unless the motion to dismiss shall have been filed and notice thereof given to the appellant, prior to the filing of the record; *provided:* however, that the Court may dismiss an appeal upon its own motion where it appears the appellant has been guilty of laches."

Here the transcript was filed before the hearing of the motion to dismiss the appeal, and we are satisfied that defendant was not guilty of laches in serving and filing the record on appeal. The motion therefore to dismiss on that ground is overruled.

The ground, of the second motion to dismiss, was that the undertaking on appeal was defective and void. It appears from the record that when defendant, Frances A. Taylor, was about

to perfect the appeal her counsel obtained an order from the trial court staying execution of the judgment upon the filing of a good and sufficient bond in the amount of $7,500, conditioned that "appellant will pay all costs awarded against her on the appeal or on a dismissal thereof not exceeding $300, and during possession of the property involved in said action by the appellant aforesaid that she will not commit, or suffer to be committed, any waste thereon and that if the said judgment appealed from shall be affirmed or the appeal dismissed that the said appellant will pay the value of the use and occupation of the said property from the time of the appeal until the delivery of possession thereof, not exceeding the amount of $3,000 per year."

The undertaking on appeal after reciting the entry of the judgment in favor of plaintiffs awarding restitution of the property and $1,500 attorneys' fees and costs recites that the appellant will pay all damages and costs which may be awarded against her on the appeal or on a dismissal thereof not exceeding $300.

The undertaking on appeal then made provision for the surety to be further bound in the sum of $7,500 in consideration of the stay of execution of the judgment. Plaintiff contends that the undertaking on appeal is so uncertain and ambiguous as to be void. The undertaking is sufficient to meet the requirements of sections 93-8005 and 93-8006 as an undertaking on appeal.

If there be any ambiguity in the undertaking so far as it ██ relates to the supersedeas, that would furnish no ground for the dismissal of the appeal for want of an undertaking for costs. Compare Marlowe v. Michigan Stove Co., 48 Mont. 342, 137 Pac. 539. The motion to dismiss the appeal on this ground also must be and the same is denied.

We then come to the question of the propriety of the court's action sustaining the motion for judgment on the pleadings. Appellant first contends that the judgment cannot stand be-

cause the complaint does not state facts sufficient to constitute a cause of action.

A motion for judgment on the pleadings searches the record and permits an examination of the prior pleadings of the party making the motion. 71 C.J.S. Pleading, section 427, page 870; Board of Trustees of York College v. Cheney, 160 Neb. 631, 71 N.W. (2d) 195; Rose v. City of New Rochelle, Sup., 119 N.Y.S. (2d) 900; Lipski v. Schwartz, 5 Ill. App. (2d) 577, 126 N.E. (2d) 415; Brickell v. Kansas City, 364 Mo. 679, 265 S.W. (2d) 342, 41 A.L.R. (2d) 878.

Appellant specifically contends that the plaintiffs' complaint is insufficient because the notice of cancellation of the contract served upon defendants is not authorized by the contract pleaded in the complaint and therefore the case stands as if no notice of cancellation has yet been given to them.

Briefly the complaint alleges that plaintiffs as sellers entered into a contract for the sale of certain described land to the defendants on March 6, 1952. The total purchase price was $67,-400; that defendants made a down payment of $15,000 and agreed to pay the balance in installments; that $3,000 was to be paid on or before November 1, 1953, $3,000 on or before November 1, 1954, and ten additional installments were agreed to be made of $4,560, each payable annually, commencing on November 1, 1955. The unpaid balance was to draw interest at the rate of four percent per annum. Time of payment was made of the essence of the contract. The contract was made a part of the complaint and contains these provisions:

"And in case of the failure of Buyers to make either of the payments, or interest thereon or any part thereof or perform any of the covenants on their part hereby made and entered into, then the whole of said payments and interest shall, at the election of Sellers be forfeited and determined by giving to Buyers ninety days (90) notice in writing, of the intention of Sellers to cancel and determine this contract, setting forth in said notice the amount due upon said contract, and the time and place, when and where payment can be made by Buyers.

It is mutually understood and agreed by- and between the parties to this Contract that ninety (90) days is a reasonable and sufficient notice to be given to said Buyers in case of failure to perform any of the covenants on their part hereby made and entered into, and shall be sufficient to cancel all obligations hereunto on the part of Sellers and fully reinvest them with all right, title and interest hereby agreed to be conveyed, and Buyers shall forfeit all payments made by them on this contract, and all their right, title and interest in all buildings, fences or other improvements shall be retained by Sellers, in full satisfaction and as a reasonable rental for the property above-described and in liquidation of all damages by them sustained, and they shall have the right to enter and take possession of the premises aforesaid.''

One of the affirmative defenses averred that when defendants were in default in the payments due on November 1, 1953, and November 1, 1954, they entered into an agreement with plaintiffs called a Standby Agreement, the effect of which was to postpone those payments. Plaintiffs admit that such a Standby Agreement was entered into. Defendants being in default on payments on November 1, 1955, plaintiffs attempted to proceed under the contract to give notice of cancellation.

The notice served upon the defendants by plaintiffs on November 3, 1955, contained the following:

''* * * you have failed, refused and neglected to pay the following sums due and payable under said contract, to-wit:

''1. The sum of $3000.00 due under the terms of said contract for deed at or before the 1st day of November, 1953;

''2. The sum of $3000.00 due under the terms of said contract for deed at or before the 1st day of November, 1954;

''3. The sum of $4560.00 due under the terms of said contract for deed at or before the 1st day of November, 1955;

''4. The sum of $2096.00, being interest on the principal sum unpaid on said contract, due under the terms of said contract at or before the 1st day of November, 1955;

''5. The sum of $147.94, being the taxes assessed and im-

posed on said land for the year 1954, said amount of $147.94 being the amount of taxes together with penalty and interest, which taxes together with penalty and interest, have been paid by the undersigned.

"You are further notified that the undersigned, pursuant to the terms of said contract for deed, intend to cancel and terminate the contract at the expiration of 90 days from the time of service of this notice upon you and you are further notified that pursuant to the terms of said contract, the undersigned have elected and do elect that the whole of the payments and interest agreed to be paid by you under the terms of said contract, to-wit: the sum of $52,400.00 principal and $2096.00 interest thereon and $147.94, taxes, penalty and interest, being the total sum of $54,643.94, are due and payable by you to the undersigned and may be paid by you at the National Park Bank in Livingston, Montana, at any time within 90 days after the service of this notice upon you and that your failure so to make payment of said total sum of $54,643.94 will forfeit and determine said contract. * * *

"* * * unless said sum above mentioned to-wit: $54,643.94, has been by you paid as above provided within 90 days of the service of this notice upon you, all obligations under the terms of said contract for deed on behalf of the undersigned are cancelled and the undersigned will be fully reinvested with all right, title and interest in and to the property agreed to be conveyed under the terms of said contract for deed and you the said Garvin C. Taylor and Frances (Francis) A. Taylor shall forfeit all payments made by you under said contract for deed and all your right, title and interest in all buildings, fences or other improvements shall be retained by the undersigned * * *"

It requires no citation of authority to sustain the proposition that a vendor must strictly pursue the course prescribed by the contract in foreclosing the vendee's rights thereunder particularly when it involves a forfeiture of the payments made by the vendee. See generally 92 C.J.S. Vendor and

Purchaser, section 462, page 426; 17 C.J.S. Contracts, section 402, page 892; Thompson v. Lincoln Nat. Life Ins. Co., 110 Mont. 521, 105 Pac. (2d) 683; Tomsheck v. Doran, 126 Mont. 598, 256 Pac. (2d) 538, and compare Gulick v. Copeland, 186 Or. 640, 207 Pac. (2d) 1042.

In the absence of an agreement or statutory provision to that effect the maturity of the debt cannot be accelerated. 92 C.J.S. Vendor and Purchaser, section 422, pages 374, 375, note 35; 55 Am. Jur., Vendor and Purchaser, section 453, page 858, note 2; Annotation, 77 A.L.R. 290; Better v. Williams, 203 Md. 613, 102 A. (2d) 750, and Fox v. Pinson, 172 Ark. 449, 289 S.W. 329.

The contract in question here does not contain an acceleration clause. All that it provides is that upon default of the vendee as provided in the contract the whole of the payments and interest shall at the election of the seller be forfeited. It does not state that the seller may elect to declare the entire future installments due. It does authorize the seller to give notice in writing to cancel the contract which notice shall set forth "the amount due upon said contract." Obviously that does not authorize a notice setting forth what will later become due under the contract. It follows therefore that the complaint does not state facts sufficient to constitute a cause of action because plaintiffs have not given the defendants the requisite notice called for by the contract. The notice given called for payment in full of not only all sums past due, but also of all sums later to become due under the contract. This, as before stated, the contract does not authorize. In fact by a separate clause in the contract it is provided:

"It is understood and agreed that buyers will not be permitted to pay and Sellers will not accept as payment of the above mentioned purchase price more than twenty-five per cent, (25%) of said purchase price in any one year."

The notice served upon defendants went beyond the terms of the contract so far as it attempted to make all future installments of the contract due and payable. It underook to place

a burden upon defendants beyond that specified in the contract.

The situation is much the same as that involved in applying for a tax deed. In such cases the application must state the amount due as delinquent taxes so as to enable the owner to redeem by paying such amount.

It has been held that the amount must be stated correctly in order that the notice be valid. The statement of an incorrect amount due is fatal to the proceedings. Hinz v. Musselshell County, 82 Mont. 502, 267 Pac. 1113; Tilden v. Chouteau County, 85 Mont. 398, 279 Pac. 231; Morse v. Kroger, 87 Mont. 54, 285 Pac. 185; Shubat v. Glacier County, 93 Mont. 160, 18 Pac. (2d) 614.

We are not to be understood as holding that a slight error in the notice, as to the amount stated to be due and owing and which must be paid, would invalidate the notice as held in some of the foregoing cases. The cases relied on in the dissenting opinion of Mr. Justice Adair are illustrative of the fact that a slight error in the amount due as stated in the notice will not invalidate the notice. In the case of Montana Wheat Land Co. v. Northern Pacific Ry. Co., 308 Ill. 620, 139 N.E. 876, it was contended that the notice was invalid because it demanded repayment of the cost of serving the notice and that it demanded a greater sum than was due under the contract. The opinion does not indicate how much more was demanded than the contract called for but the fact that complaint was made that it included the cost of serving the notice is indicative of the fact that there was not much of a discrepancy between the amount demanded and the amount due.

In the Montana Wheat Land Co. case, the court, having concluded that the notice was sufficient, was justified in holding that the purchaser must within the time specified in the notice tender the amount due. But in this case the notice was unauthorized and there was no obligation on the part of the purchaser to do anything within the time stated in the purported notice, to prevent the forfeiture.

Under the contract, before a forfeiture could be obtained the seller was obliged to give a valid notice.

Likewise that case as well as the case of Forest Preserve Real Estate Improvement Co. v. Miller, 379 Ill. 375, 41 N.E. (2d) 526, relied on in the dissenting opinion, differ from this in that the buyer was seeking to rescind the contract and recover what he had paid because of the misstatement of the amount due.

In none of the cases relied on in the dissenting opinion did it appear that the seller had placed an unwarranted interpretation on the contract whereby he called upon the buyer to pay sums not yet due on the theory that the contract contained an acceleration clause, which it did not.

Here the amount stated was based upon an erroneous construction of the contract. It assumed that the contract had an acceleration clause, which it has not. The error was substantial in amount. The amount actually past due at the time the notice was given was approximately $13,000, whereas the notice called for payment in excess of $54,000 in order to prevent a forfeiture. An error of such dimensions certainly invalidates the notice.

To uphold the forfeiture here on the notice here given requires the rewriting of the contract between plaintiffs and defendants.

Instead of taking the contract as written which stated that the payments and interest "shall, at the election of sellers be forfeited and determined by giving to buyers ninety days (90) notice in writing, of the intention of sellers to cancel and determine this contract, setting forth in said notice the amount due upon said contract" we must revise and rewrite the contract so that a forfeiture may be accomplished by giving ninety days notice of the intention of the sellers to terminate the contract "which notice need not set forth the amount due under the contract."

We must take the contract as it is written, and we are not at liberty to rewrite it in order to accomplish a forfeiture.

Forfeitures are not favored in law or in equity and certainly

not to the exent that the court should accomplish it by rewriting the contract and particularly in a case such as this where the buyer has offered to make full payment of all sums due or to become due before a valid notice of forfeiture has been given under the contract.

Furthermore defendants ought not to be required to pay the $13,000, which is admittedly due and which was correctly demanded in the notice at the risk of having it forfeited too in the event that it should finally be held as contended by plaintiffs that the contract contained an acceleration clause.

Counsel for plaintiffs contend that the clause above-quoted is the standard acceleration clause appearing in sales contracts. Such is not the case. A usual clause is, "then all of said debt secured hereby shall become due and collectible." Bohan v. Harris, 71 Mont. 495, 230 Pac. 586, 587. "* * * the total balance due under the contract shall become immediately due and payable * * *" Silfast v. Asplund, 93 Mont. 584, 594, 20 Pac. (2d) 631, 636. "* * * then the whole of said payments and interest shall, at the election of said first party become immediately due and payable * * *" White v. Jewett, 106 Mont. 416, 78 Pac. (2d) 85, 86.

The language under the contract in question here is not sufficient authority to declare future installments not yet due, to be due and payable. The complaint on this account fails to state a cause of action. The statement in the dissenting opinion of Mr. Justice Adair that defendants in their answer admitted that notice had been served upon them as required by the contract is not a fact. On this point the answer simply "admits that on the 3rd day of November 1955 the plaintiffs caused to be served upon the defendants, a written notice marked Exhibit A and made a part of the plaintiffs' amended complaint."

There was no admission that notice was given as required by the contract.

The further question presented, and which must be determined, is whether the complaint states a cause of action under the second cause of action. In substance it alleges that the

defendants have made improvements upon the property which plaintiffs contend belongs to them if the contract is forfeited, and that the defendants threaten to, and unless restrained, will remove the improvements from the premises. It likewise contains an allegation that defendants threaten to and will, if not restrained, cut and remove "timber, pulp wood and saw logs, and trees, thus permanently and irreparably damaging the plaintiffs."

Whether the plaintiffs have a right to restitution or not they ▮▮▮▮ do have the right to restrain the defendants from committing waste upon the property. This is expressly so stipulated in the contract. We hold that the second cause of action in the complaint does state facts sufficient to constitute a cause of action. However it does not follow that plaintiffs are entitled to a judgment on the pleadings as to it.

As to the second cause of action most of the allegations therein are denied by the defendants in their answer. The answer admits that defendants have placed improvements upon the property and alleges that the improvements are worth approximately $10,000. It denies the other allegations with respect to the purpose of defendants to withdraw or remove the improvements from the property. The defendants likewise in their answer deny each and every allegation with respect to the cutting and removal of timber, pulp wood and saw logs and trees. They thus deny that plaintiffs are or will be permanently and irreparably damaged.

In connection therewith, defendants allege affirmatively that plaintiffs agreed that they could remove and cut timber from the property and remove pulp wood, saw logs and trees in order to make the payments under the contract.

Before the purchaser may be enjoined from cutting timber ▮▮▮▮ or removing timber already cut it must be shown that the vendor's security will be impaired and rendered insufficient. 55 Am. Jur., Vendor and Purchaser, section 392, page 814, note 17, and cases therein cited. As above-noted, it is alleged that plaintiffs will be irreparably damaged if defendants are

not restrained, but this is put in issue by the specific denial in the answer. That presents a question of fact for the jury as to whether the security will be impaired by the amount of timber which defendants have been or are threatening to remove.

Whether the pleadings present other issues of fact we need not now determine. Suffice it to say, that if some of the affirmative defenses do not state facts sufficient to constitute a defense they should be subject to the right of amendment. Strack v. Federal Land Bank, 124 Mont. 19, 218 Pac. (2d) 1052, and cases therein cited.

If plaintiffs would attack the answer of the defendants, it should be done before the day of the trial with a jury in attendance, and opportunity is afforded the trial judge to study the pleadings and the issues, if any, tendered by them. Obviously, when a jury is in attendance the court must act speedily and necessarily without much time for investigating or studying questions relating to the pleadings. We may say in passing that what we have said with reference to amendments certainly applies to defendants' affirmative defense to plaintiffs' first cause of action wherein it is attempted to be alleged that the plaintiffs wrongfully, intentionally and maliciously used their influence to prevent the defendants from renting the property so as to obtain income from it to enable them to meet the contract payments. If plaintiffs desired information as to how or in what manner they used their influence they should either have demurred to this defense for uncertainty or made a motion to more definitely state the nature of the influence, and in either event defendants would have an opportunity to amend if the court should hold that the answer as it now stands is insufficient. For the above-stated reasons the judgment is reversed and the cause remanded for trial.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICE CASTLES, and THE HONORABLE W. R. FLACHSENHAR, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

434

MR. JUSTICE ADAIR (dissenting).

Lester C. Rader and his wife, Myrtle B. Rader, at all times herein mentioned were and they now are the owners of a 2,700 acre ranch situate in Meagher County, Montana.

On March 6, 1952, the Raders entered into a written contract for deed with Garvin C. Taylor and his wife, Frances (Francis) A. Taylor, whereby the Taylors agreed to buy the Raders' ranch for the sum of $67,400, and wherein the Taylors agreed to pay such stipulated purchase price in thirteen separate installments together with four percent interest on all unpaid installments from the date of said contract and, upon the payment to them in full of such agreed purchase price, the Raders agreed to convey to the Taylors by good and sufficient warranty deed, the fee simple title to such property clear of all encumbrances.

Solely by virtue of the above contract the Taylors were permitted to move upon and take possession of the Raders' ranch.

The only rights acquired by the Taylors in or to the Raders' ranch were such as they were given under and pursuant to the aforesaid written contract for deed executed on March 6, 1952, the pertinent portions whereof provide that the defendants, Mr. and Mrs. Taylor, were to pay to the plaintiffs, Mr. and Mrs. Rader, the full agreed purchase price as follows:

"The sum of Fifteen Thousand Dollars ($15,000.00) at or before the execution of this contract, the receipt of which is hereby acknowledged.

"The sum of Three Thousand Dollars ($3,000.00) at or before the 1st day of November 1953;

"The sum of Three Thousand Dollars ($3,000.00) at or before the 1st day of November 1954;

"The balance of the purchase price in the amount of Forty-five Thousand Six Hundred Dollars ($45,600.00) in ten equal annual payments, commencing with a payment of Four Thousand, Five Hundred Sixty Dollars ($4,560.00) on or before the 1st day of November 1955 and a like amount on or before the

1st day of November of each year thereafter until the entire purchase price shall be paid, together with interest at the rate of four per cent (4%) per annum, from the date of this contract on the whole sum remaining from time to time unpaid and payable on the dates of principal payments as above set forth, and to pay all taxes, assessments or impositions that may be legally imposed upon said land, subsequent to the year 1951 before the same become delinquent, except the two-twelfths of 1952 taxes which Sellers agree to pay. *And in case of the failure of Buyers to make either of the payments, or interest thereon or any part thereof or perform any of the covenants on their part hereby made and entered into, then the whole of said payments and interest shall, at the election of Sellers be forfeited and determined by giving to Buyers ninety days (90) notice in writing, of the intention of Sellers to cancel and determine this contract, setting forth in said notice the amount due upon said contract, and the time and place, when and where payment can be made by Buyers. It is mutually understood and agreed by and between the parties to this Contract that ninety (90) days is a reasonable and sufficient notice to be given to said Buyers in case of failure to perform any of the covenants on their part hereby made and entered into, and shall be sufficient to cancel all obligations hereunto on the part of Sellers and fully re-invest them with all right, title and interest hereby agreed to be conveyed, and Buyers shall forfeit all payments made by them on this contract, and all their right, title and interest in all buildings, fences or other improvements shall be retained by Sellers, in full satisfaction and as a reasonable rental for the property above described and in liquidation of all damages by them sustained, and they shall have the right to enter and take possession of the premises aforesaid.* * * *

"It is agreed that this contract is not to be transferred or assigned by the Buyers without the consent in writing of the Sellers having been first obtained.

"It is understood and agreed that the notice of default hereinabove provided may be served personally or by regis-

436

tered mail and service shall be complete upon the Sellers depositing in a United States Post Office said notice, enclosed in an envelope, sealed, with the necessary postage prepaid thereon, and addressed to the Buyers or either of them at Livingston, Montana." Emphasis supplied.

The one and only payment called for by the above contract which the Taylors made was the initial down paymen due, payable and paid on March 6, 1952.

Mr. and Mrs. Taylor were unable to pay the next two installments called for by the written agreement and, pursuant to a later "standby" agreement, entered into with the Raders, the 1953 and 1954 installment payments were deferred until October 31, 1955, but neither of such installments was paid by the date specified. In addition the installment in the sum of $4,560.00 due on or before November 1, 1955, and not included in the "standby" agreement was not paid. Following these breaches of the written agreement by the defendants Taylor, the plaintiffs Rader, on November 2, 1955, sent the following notice to the defendants Taylor, viz.:

"Notice

"To: Garvin C. Taylor and Frances (Francis) A. Taylor

"Pursuant to a certain contract for deed, dated the 6th day of March, 1952, by and between Lester C. Rader and Myrtle B. Rader, husband and wife, of White Sulphur Springs, Montana, designated as the 'sellers' and Garvin C. Taylor and Frances (Francis) A. Taylor, husband and wife, of White Sulphur Springs, Montana, as joint tenants with right of survivorship, and not as tenants in common, therein designated as the 'buyers',

"You, the said Garvin C. Taylor and Frances (Francis) A. Taylor hereinabove referred to, are hereby notified that you have failed, refused and neglected to comply with the terms of the above mentioned contract for deed in that you have failed, refused and neglected to pay the following sums due and payable under said contract, to-wit:

"1. The sum of $3000.00 due under the terms of said contract for deed at or before the 1st day of November, 1953;

"2. The sum of $3000.00 due under the terms of said contract for deed at or before the 1st day of November, 1954;

"3. The sum of $4560.00 due under the terms of said contract for deed at or before the 1st of November, 1955;

"4. The sum of $2096.00, being interest on the principal sum unpaid on said contract, due under the terms of said contract at or before the 1st of November, 1955;

"5. The sum of $147.94, being the taxes assessed and imposed on said land for the year 1954, said amount of $147.94 being the amount of taxes together with penalty and interest, which taxes, together with penalty and interest have been paid by the undersigned.

"You are further notified that the undersigned, pursuant to the terms of said contract for deed, intend to cancel and terminate the contract at the expiration of 90 days from the time of service of this notice upon you and you are further notified that pursuant to the terms of said contract, the undersigned have elected and do elect that the whole of the payments and interest agreed to be paid by you under the terms of said contract, to-wit: the sum of $52,400.00 principal and $2096.00 interest thereon and $147.94, taxes, penalty and interest, being the total sum of $54,643.94, are due and payable by you to the undersigned and may be paid by you at the National Park Bank in Livingston, Montana, at any time within 90 days after the service of this notice upon you and that your failure so to make payment of said total sum of $54,643.94 will forfeit and determine said contract.

"You are further notified that unless said sum above mentioned to-wit, $54,643.94, has been by you paid as above provided within 90 days of the service of this notice upon you, all obligations under the terms of said contract for deed on behalf of the undersigned are cancelled and the undersigned will be fully reinvested with all right, title and interest in and to the property agreed to be conveyed under the terms

438

of said contract for deed and you the said Garvin C. Taylor and Frances (Francis) A. Taylor shall forfeit all payments made by you under said contract for deed and all your right, title and interest in all buildings, fences or other improvements shall be retained by the undersigned in full satisfaction and as a reasonable rental for the property described in said contract and in liquidation of all damages by the undersigned sustained and the undersigned shall have the right to and will re-enter and take possession of the premises described in said contract for deed.

"Dated this 2nd day of November, 1955.

"/s/ Lester C. Rader
"Lester C. Rader
"/s/ Myrtle B. Rader
"Myrtle B. Rader"

At that time, November 2, 1955, the date whereon the above-quoted notice so authorized and agreed upon in the contract, was given, not a single installment payment called for and required by both the original contract and the supplemental "standby" agreement had been paid by the defendants Taylor or received by the plaintiffs Rader.

The defendants Taylor made no complaint whatever about the sufficiency of the above notice at the time it was served upon them or within ninety days thereafter and, within said ninety days so specified in the notice and provided for in the original contract, the Taylors did absolutely nothing to absolve themselves from their defaults under the contract. They wholly failed and omitted to pay any part of the past due installments called for by the contract.

On May 24, 1956, the plaintiffs Rader commenced this action against the defendants Taylor. However such suit was not brought until some 120 days after the expiration of the ninety days specified in the notice so served upon the Taylors and provided for and agreed to in the contract.

In their complaint the plaintiffs Rader alleged that notice had been served upon the defendants Taylor as required

by the contract and *this allegation of the complaint the defendants admitted in their answer herein.*

In her brief filed in this court on this appeal, the defendant Francis A. Taylor, for the first time, attempts to challenge the sufficiency of the notice given them, contending but one point, namely: that by demanding not only the payment of the past due installments, but also by demanding all sums to become due in the future, plaintiffs have asked for too much. In other words, the defendant Francis A. Taylor here urges that by demanding payment of any sums other than just the delinquent installments, plaintiffs' entire notice was thereby invalidated.

The authorities fail to support such contentions.

The notice plainly, properly and fully informed the defendants Taylor of each and all of the installment payments called for by the contract which had become due and which they had failed to pay, and defendants were required to act on such notice and make proper tender and payment of the sums and amounts then past due and demanded. This duty the defendants failed and omitted to perform.

In her brief on the appeal to this court, the defendant Francis A. Taylor asserts that in her answer to the complaint in the district court she had generally denied the sufficiency and validity of the notice given the defendants by the plaintiffs. The rule is that when a fact is both admitted and denied in an answer the admission is controlling. Thus are the defendants bound by their admission that adequate notice was received and the sufficiency of the notice did not become and it is not an issue in the case nor on this appeal.

*The notice states a material fact upon which the plaintiff sellers are entitled to cancellation.*

The majority decision correctly states the rule that a seller must strictly pursue the course prescribed by the contract in foreclosing the purchaser's rights—but confuses this rule with that applicable to the giving of the agreed notice of cancellation as provided for in the contract for deed.

Strict compliance with the contract required that notice be given for 90 days. It is indisputable that this provision was strictly complied with here. In addition the contract specifically provided precisely what the notice should contain. The contract required that the notice set forth "the amount due upon said contract and the time and place when and where payment can be made by the Buyers." *Each and all of these essential items are contained in the above-quoted notice.*

The defendants wholly failed to pay the two $3,000 installments due November 1, 1953, and 1954, under the "standby" agreement; they failed to pay the $4,500 and $2,096 installments due November 1, 1955; and they failed to pay the taxes for the year 1954 in the amount of $147.94. The written notice of November 2, 1955, plainly stated and informed defendants that plaintiffs intended to cancel the contract at the expiration of 90 days from the time of service of such notice unless within such 90 days such installments were paid.

What if the plaintiffs in their notice should also demand more than was then due? What rule then controls?

In 91 C.J.S. Vendor and Purchaser section 139, page 1084, the rule is set out as follows:

*"The fact that the vendor demands more than he is entitled to receive from the purchaser as a condition of avoiding a forfeiture does not render the forfeiture void since the notice is good as long as it contains one matter on which the vendor is entitled to give notice of forfeiture."* Emphasis supplied.

In Montana Wheat Land Co. v. Northern Pacific Ry. Co., 308 Ill. 620, 626, 139 N.E. 876, 879, where the Illinois court considered the applicable Montana statutes, the vendor's notice of intention to forfeit misstated the amount necessary to reinstate the contract. The contract, as here, provided for installment payments. At the time the notice to cancel was served, installment payments in the words of the Illinois Court, "aggregating over $250,000" were unpaid. The Illinois Court said concerning the notice to cancel: "The notice states that the amount required to be paid to reinstate the contract is

$275,535.06, and interest on $195,000 from January 1, 1915, plus cost of service." There, as in the instant case, the vendee claimed the notice was fatally defective, because it asked for more than the past due installments but the Illinois Court there held: "The contract does not provide what shall constitute a notice of default further than that it be a notice in writing and assuming that the amounts set forth as necessary to reinstate the contract are, as contended by appellant, not correct, *the contract itself provides the measure of the payment necessary for reinstatement, and appellant, by tendering the amount shown to be due by the contract within the 30 days prescribed in the notice would have thus been able to avoid a forfeiture.* It is not even contended by appellant that any attempt was made to make a tender of any amount, nor does the bill show that any payment other than the initial payment of $70,000 was ever made on the contract." Emphasis supplied.

The above rule was followed in Forest Preserve Real Estate Improvement Corp. v. Miller, 379 Ill. 375, 385, 41 N.E. (2d) 526, 530. In that case the vendor's notice demanded payment for taxes which were not due under the contract. The court quoted with approval the holding in the Montana Wheat Land Co. case, supra, saying: "The fact that appellee demanded more than it was entitled to receive, did not of itself render the forfeiture void. In Montana Wheat Land Co. v. Northern Pacific Railway Co., 308 Ill. 620, 139 N.E. 876, where the vendor's notice of intention to forfeit misstated the amount necessary to reinstate the contract, it was claimed that such misstatement gave the vendee a right to rescind the contract and demand the return of its money. This court, however, refused to sustain that contention, pointing out that the contract itself provided the measure of the payment necessary for reinstatement, and the appellant, by tendering that amount within the time prescribed by the notice, would have been able to avoid forfeiture, and the fact that a vendor may demand, in his notice of forfeiture, more than he is entitled to, will not defeat the forfeiture; but if the forfeiture notice contains one matter

on which he is entitled to give notice of forfeiture, such notice is good. This appears to be the general rule. [Citing cases.]'' This is the rule in Iowa, Washingto nand California. See Gibson v. Thode, 209 Iowa 368, 228 N.W. 91; Harris v. Seattle Land & Improvement Co., 122 Wash. 323, 211 Pac. 282, 214 Pac. 1066; Adams & McKee Land Co. v. Dugan, 68 Cal. App. 226, 228 Pac. 681.

In the instant case the notice provides that default may be cured by paying: *When,* within 90 days; *Where,* at the National Park Bank at Livingston, Montana; *What,* the amounts due, namely:

"1. The sum of $3000.00 due under the terms of said contract for deed at or before the 1st day of November, 1953;

"2. The sum of $3000.00 due under the terms of said contract for deed at or before the 1st day of November, 1954;

"3. The sum of $4560.00 due under the terms of said contract for deed at or before the 1st day of November, 1955;

"4. The sum of $2096.00, being interest on the principal sum unpaid on said contract, due under the terms of said contract at or before the 1st day of November, 1955;

"5. The sum of $147.94, being the taxes assessed and imposed on said land for the year 1954, said amount of $147.94 being the amount of taxes together with penalty and interest, which taxes, together with penalty and interest have been paid by the undersigned."

In their notice the plaintiffs set forth five separate breaches upon any or all of which they were entitled under the terms of the contract to demand a cancellation.

The majority opinion of this court herein holds that the written notice served November 2, 1955, upon the defendants Taylor, is so fatally defective as to constitute no notice at all and that as a result thereof the first cause of action set forth in plaintiffs' complaint herein fails to state facts sufficient to constitute a cause of action in favor of the plaintiffs Rader and against the defendants Taylor. With such holding I am wholly unable to agree.

The majority opinion of this court asserts that the above-quoted notice which the plaintiffs Rader served upon the defendants Taylor went beyond the terms of the contract so far as it attempted to make all future installments of the contract due and payable, however this did not relieve the defendants Taylor from their obligation to get busy and tender and pay, within the 90 day period provided in the contract, the unpaid past due installments called for by the contract and which the defendants had obligated themselves to pay within the 90 days or suffer cancellation of their contract.

The majority opinion further erroneously asserts that the situation presented is much the same as that involved in applying for a tax deed; that the amount must be correctly stated for the notice to be valid and that the statement in the notice, of an incorrect amount is fatal to the proceedings. As authority for such assertions the majority opinion cites and relies upon the following four decisions, viz.: Hinz v. Musselshell County, 82 Mont. 502, 267 Pac. 1113; Tilden v. Chouteau County, 85 Mont. 398, 279 Pac. 231; Morse v. Kroger, 87 Mont. 54, 285 Pac. 185; and Shubat v. Glacier County, 93 Mont. 160, 18 Pac. (2d) 614.

Next the majority opinion says: "We are not to be understood as holding that a slight error in the notice, as to the amount stated to be due and owing and which must be paid, would invalidate the notice as held in some of the foregoing cases."

The mischief in the holding of the majority opinion herein is apparent when it is observed the majority bases its ruling solely upon decisions which apply only to *tax deed cases* and which involved notices prescribed by statute which must be fully and strictly complied with before a valid *tax deed* may issue and the erstwhile owner's title to his property divested. *Such tax deed decisions have no application whatever to the instant case.* Such highly technical, strict construction does not apply to the notice herein involved. A statutory notice in a suit involving forfeiture of an owner's title to his property

444

and the issuance of a tax deed under the tax laws is one thing, but a notice issued pursuant to a private contract in a private business transaction is quite another matter. To the practicing attorney the rule here announced and applied in the majority opinion will cause nothing but confusion. It is no rule at all. Under it no lawyer will be in a position to determine what amount of error will put him out of court. The rule here applicable is the general rule, namely, that a correct and accurate statement and notice of *one matter* upon which the default may be based will suffice. The plaintiffs here, by accurately setting out five separate grounds and defaults, came well within this rule. The notice was good. The complaint states a cause of action.

*Waiver and Consent.* The notice in this case clearly sets forth the intent of the buyers to cancel the contract because of the sellers' multiple defaults. The notice conforms to the contract which is binding upon both the sellers and the buyers. By the terms of the contract the sellers agreed, and held themselves bound to the agreement, that ninety days would be a sufficient time for them to correct a default in the event such was so asserted by the buyers.

When defendants received the notice of default, what did they do? Nothing! They suffered the time allowed them under both the contract and notice to elapse; they neither paid nor offered to pay the debt; and, at no time within the 90 day limit, did they protest or question the validity of the notice given, but instead they remained in possession of the property and forced the sellers to resort to a lawsuit in an attempt to regain possession of their ranch.

The defendant prospective purchasers have been in possession of this property since March 1952 and the only payment made by them was the down payment at the time the contract was signed. The defendants have paid nothing on the indebtedness since that time, notwithstanding that they have pocketed the entire yield from the land. The plaintiffs Rader, bound by the contract, now find they cannot get either their money or

their property. The course of conduct on the part of the plaintiffs Rader has been one of indulgence. The defendants Taylor agreed to the contract, yet when given due notice that the Raders were going to cancel, the Taylors did nothing to cure their defaults. The time granted the Taylors was four and one-half times that which they would have been allowed to answer a lawsuit or suffer the entry of their default. Wholly failing to comply with the contract by which they had agreed to be bound and some *two years* after receipt of the notice provided for in the contract, the defendants now urge strict compliance with only those provisions of the contract having to do with notice of default, and cancellation. In fairness and equity, the judgment on the pleadings should be upheld and affirmed. The trial court was correct in its ruling and judgment. The defendants Taylor cannot make a case to support either the allegations of their pleadings herein nor their contentions on this appeal. A new trial will be of no avail. The Raders are entitled to the possession of their ranch. The judgment of the district court should be affirmed.