GLACIER CAMPGROUND ET AL., PLAINTIFFS AND APPELLANTS, v.
WILD RIVERS, INC., ET AL. DEFENDANTS AND RESPONDENTS.

No. 13946.
Submitted on Briefs April 5, 1978.
Decided Dec. 18, 1978.
Order March 29, 1979.

390

Murphy, Robinson, Heckathorn & Phillips, Kalispell, for plaintiffs and appellants.

John R. Gordon, Kalispell, for defendants and respondents.

MR. JUSTICE HARRISON delivered the opinion of the Court.

Plaintiff Glacier Campground appeals from a judgment entered by the District Court of Flathead County, the Honorable J. M. Salansky, dismissing its complaint and awarding costs to defendants. Parties submitted an agreed statement of facts and briefs supporting the legal position of each, on which the decision was rendered.

On March 30, 1973, plaintiff Glacier Campground, a limited partnership, and defendants Paul M. Blair, Jr., William W. Green III, and William E. Kuster entered into a contract for the sale and purchase of certain real estate in Flathead County. Pursuant to the contract, defendants were to pay plaintiff $293,000 for the real and personal property described therein. Defendants, Blair, Green and Kuster assigned their interest in the contract to Wild River, Inc., a foreign corporation authorized to do business in the State of Montana, and in so doing, retained individual liability and assumed corporate liability for the duties and obligations imposed by the contract.

The individually named defendants and the assignee corporation subsequently defaulted in performance of the contract. Plaintiff-seller notified the purchasers of their default, and specified the amounts due and owing for principal, interest thereon, real estate taxes and insurance premiums. Following those specifications, the notice and demand for payment stated: "As a consequence of said defaults, the undersigned, pursuant to Paragraph 9 of said Contract for Deed have elected to declare the full balance payable and do hereby declare the full balance due under the terms of said Contract immediately due and payable as of this date." It concluded with this statement: "In the event you fail to make such payment, by that date [December 31, 1974], the undersigned will have no

alternative other than to proceed with suit and recover such sums together with interest and costs of suit."

Defendants made no payment to remedy the default, so plaintiff instituted proceedings in the District Court of Flathead County. In the amended complaint, relief was sought in the alternative: judgment for the total amount yet to be paid under the terms of the contract, or for the amounts already due as of the date of judgment. No relief was granted, however, because the District Court concluded that, as a matter of law, the contract for deed provided the seller a single remedy in the event of purchasers' default, that remedy being repossession of the property and retention of improvements and payments already made by defendants.

Three of the four issues advanced by the parties may be rendered to the following :

Is plaintiff, by the terms of the contract, precluded from pursuing an action to obtain a money judgment either for the total amount to be paid by defendants under the terms of the contract or, in the alternative, for the amounts due as of the date of judgment?

Although the pleadings do not put the following in issue, the parties nonetheless ask that we entertain this question:

If plaintiffs may so pursue an action and a money judgment is awarded allowing a sale of property, may plaintiff obtain a deficiency judgment in the event that the proceeds from the sale of the property do not at least equal that due plaintiff under the terms of the contract?

We consider these in turn.

The portion of the contract around which the dispute centers reads as follows:

"9. *DEFAULT*—In case of the failure of the said Purchasers to make any of the payments of principal or interest, or to perform any of the covenants on their part hereby made and entered into, then the whole of said payments and interest shall, at the election of said Seller, become immediately due and payable, except as hereinafter provided, and this Contract shall, at the option of the

Seller, be forfeited and determined by giving to the Purchasers sixty (60) days' notice, in writing, of the intention of the Seller to cancel and determine this Contract and any covenants and payments which the Purchasers have failed to perform and make, if any; and the time when place where payment can be made; should the said Purchasers make good such default within said 60-day period, then their rights under this Contract shall be fully reinstated, and said acceleration of said payments shall fail; however, should said Purchasers fail to make good any such default within said 60-day period, said acceleration shall be good and this Contract may be terminated by the Sellers as aforesaid.

"It is mutually understood and agreed by and between the parties to this Contract that 60 days is a reasonable and sufficient notice to be given said Purchasers in case of their failure to perform any of the covenants on their part hereby made and entered into and shall be sufficient to cancel all obligations hereunto on the part of the said Sellers and fully invest them with all right, title and interest agreed to by conveyed, and the said Purchasers shall forfeit all payments made by them on this Contract, and all right, title and interest in all buildings, or other improvements shall be retained by the said Sellers, in full satisfaction and as a reasonable rental for the property above described and in liquidation of all damages by them sustained, and they shall have the right to take possession of the land and premises aforesaid."

Over fifty years ago, in *Wandell v. Johnson* (1924), 71 Mont. 73, 227 P. 58, this Court had occasion to interpret language of a real contract for the sale and purchase of real estate, much of which language is substantially similar to that found in the default clause of the contract before us. the *Wandell* contract read in pertinent part:

" 'And *in case of failure of the said party of the second part* [Purchaser] *to make either of the payments, or interest thereof or any part thereof, or perform any of the covenants on his part hereby made and entered into, then the whole of said payments and interest shall, at the election of said first party* [Seller] *become im-*

*mediately due and payable, and this contract shall, at the option of the party of the first part, be forfeited and determined by giving to the said second party thirty days' notice in writing,' which notice 'shall be sufficient to cancel all obligation hereunto on the part of the said first party and fully reinvest him with all right, title and interest hereby agreed to be conveyed, and the party of the second part shall forfeit all payments made by him on this contract, and all his right, title and interest in all buildings, fences or other improvements, whatsoever, and such payments and improvements shall be retained by the said party of the first part, in full satisfaction and in liquidation of all damages by him sustained, and he shall have the right to re-enter and take possession of the premises aforesaid.' "* 71 Mont. at 75, 227 P. at 59. (Emphasis added.)

The emphasized portions of the quoted language found in the default provision of the contract under consideration.

The *Wandell* Court expressed its dissatisfaction with the language in the contract before it in these terms:

"No one would have the temerity to suggest that the language of this agreement is either clear or explicit. Indeed, it would be difficult to conceive of a contract expressed more clumsily; hence we are required to resort to the usual rules of construction to ascertain, if possible, what the parties meant by the language they employed." 71 Mont. at 76, 227 P. at 60.

We have essentially the same language before us now, more than fifty years later. It has not been made clear or explicit by the passage of time; it is still clumsy. Thus, we, too, must resort to the usual rules of construction to ascertain, if possible, what the parties meant by the language they employed.

Section 13-702, R.C.M.1947, mandates that a contract must be interpreted so as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as that is ascertainable and lawful. The intention of the parties is to be ascertained, if possible, solely from the language used in the instrument, section 13-705, R.C.M.1947, and resort may be had to extrinsic evidence only when the contract, on its face, appears ambiguous or

uncertain. See *Hill Cattle Corp. v. Killorn* (1927), 79 Mont. 327, 340-41, 256 P. 497, 502. Because the parties submitted the case on an agreed statement of facts, the lower court had no resort to extrinsic evidence, even though the contractual provision regarding default appears, on its face, ambiguous and uncertain. We must now grapple with the language of the contract itself.

Defendants offer the following interpretation of the clause under consideration:

"Upon default by purchaser, the seller has the right to accelerate the payments and demand the payment of the entire total [sic] within 90-days [sic]. If the buyer complies with the demand, then he is entitled to the warranty deed under the contract. If the buyer fails or refuses to meet the demand, he loses his equity in the contract and is denied the warranty deed and possession of the property. The seller has the option of demanding the entire principal balance or simply the installment then due. In either event, he is more than adequately protected in that he still holds legal title to the property. The buyer, on the other hand, has but one [sic] choice, either pay the amount demanded by the seller or forfeit all of his rights under the contract. There is nothing in the contract that contemplates a suit for money."

Defendants, thus, have no quarrel with the right of the seller to demand the entire principal balance or the amounts then due. They do dispute the right of the seller to *bring* an action to *get* some action on the demand.

Despite the fact that forfeitures are not favored in law or equity, purchasers advance a most curious request, that being to *impose* forfeiture on them. While that might be advantageous for these particular defendants, we are not unmindful of the harsh results which forfeiture may work in other circumstances. See G. Nelson and D. Whitman, *The Installment Land Contract—A National Viewpoint*, 1977 B.Y.U.L. Rev. 541, 543-65 (1977), and Comment, *Forfeiture: The Anomaly of the Land Sale Contract*, 41 Alb.L.Rev. 71 (1977). We do not now entertain the question of the equity of foreclosure in cases involving contracts for deed, and so reserve

judgment only whether this plaintiff may look beyond the terms of the contract for relief.

Defendants in the instant case, as did the defendant in *Wandell*, 71 Mont. at 76, 227 P. at 59, contend that forfeiture of the contract, retention of the money paid, and reentry into possession constitute the only remedy available to plaintiff. Defendants further contend as did the earlier defendant, *Wandell*, 71 Mont. at 78, 227 P. at 60, that because the contract provides an exclusive remedy, plaintiff cannot maintain an action at bar for a money judgment. *Wandell* was disposed of on the basis of the holding in *Alexander v. Wingett* (1922), 63 Mont. 254, 206 P. 1088, viz., the forfeiture clause in the contract was deemed to be for the benefit of the vendor, and so the failure of the vendee to make payments when due did not render the contract void so as to preclude an action for the purchase price of the real estate or so much thereof as was due when the action was commenced, a holding which we find adaptable to the instant case. Because the contract at bar does not provide that the remedy of forfeiture with retention of payments and improvements is the exclusive remedy available to the seller in the event of the purchasers' default, the seller is not limited in his pursuit of relief. We hold that, in the instant case, the seller is not precluded from bringing an action to recover the purchase price of the real estate or, in the alternative, for so much thereof due as of the date of judgment.

After careful examination of the first paragraph-sentence of the default clause, we conclude that it appears to say this:

If the Purchasers fail to perform according to the terms of the contract, the Seller may elect to accelerate the payments such that all payments and interest become immediately due and payable. In order to exercise that election, Seller must give Purchasers notice in writing of the intent to do so. That written notice also must specify both how Purchasers failed to perform as required by the contract and how Purchasers are to perform, within sixty days and according to the terms of the contract, in order to cure their default. If, within the sixty days, Purchasers cure such default, the accelera-

tion is thereby voided, and the contract continues in full force and effect. If, however, within the sixty-day period, Purchasers do not cure such default, the acceleration is effective and all payments and interest are due and payable as of the last date of the sixty-day period.

The sixty-day period is, in effect, a grace period, within which defaulting purchasers may exercise the opportunity to redeem themselves by coming current in their contractual obligations and thereby keep the contract alive.

The second paragraph-sentence of the default clause is difficult to construe. To make any sense of the mention of "60 days" there, reference must necessarily be made to the immediately preceding paragraph-sentence. When that is done, the initial portion of the second paragraph-sentence seems to say:

The parties agree that the sixty-day period referred to in the preceding paragraph is a reasonable period of time within which Purchasers may act to cure their default.

How "60 days . . . shall be sufficient to cancel all obligations . . . and fully invest . . . right, title and interest . . ." is a mystery, for days, in and of themselves and regardless of their number, do not cancel obligations and do not invest anyone or anything with right, title *or* interest. This, perhaps, is what is meant:

Purchasers' failure to cure their default within that sixty-day period is sufficient to cancel all of Seller's obligations under the contract and to fully invest Seller with all right, title and interest agreed to be conveyed by this contract.

We do not speculate as to the nature of the phrase "is sufficient to cancel"; we merely employ the parties' language to attempt to make better sense of that which is virtually nonsensical.

The remainder of the paragraph-sentence says the following:

If the Purchasers fail to cure their default within that sixty-day period, they shall forfeit all payments made by them under the terms of the contract. All right, title and interest in all buildings or other improvements shall be retained by the Seller, in full satisfaction and as a reasonable rental for the property previously des-

cribed and in liquidation of all damages sustained by the Seller. The Seller shall have the right to take possession of the land and premises previously described.

It would have made more sense for the contract to provide that *payments*, made by the purchasers and forfeited because of their default and failure to cure, be retained by the seller as full satisfaction and as a reasonable rental for the property subject of the contract. While this may have been what the parties intended to say or thought they were saying or were trying to say, the contract does not say that. Instead, it states that "all right, title and interest, or other improvements" are to be retained by the seller in full satisfaction and as a reasonable rental. Too, it would have made more sense for the parties to have drafted the provision regarding the seller's retention of buildings *or* improvements using the conjunctive "and" rather than the disjunctive "or, but, again, the contract does not say that. The contract reads "all right, title and interest in all buildings, *or* other improvements shall be retained by" seller. (Emphasis added.)

The problem now becomes one of reconciling the default provision to itself, see section 13-718, R.C.M.1947, perhaps an impossible task. Upon the purchasers' default, the seller is given the option to accelerate payments such that all payments and interest become immediately due and payable. (That this language of acceleration is clear. The following language from the contract at issue in *White v. Jewett* (1938), 106 Mont. 416, 78 P.2d 85, language almost identical with that found in the default clause under consideration here, was deemed to be an example of "a usual clause" of acceleration:

"* * * then the whole of said payments and interest shall, at the election of said first party become immediately due and payable * * *"

*Rader v. Taylor* (1958), 134 Mont. 419, 431, 333 P.2d 480, 488.) The purchasers are given a sixty-day period in which they may redeem themselves. If they do not so redeem, the acceleration is effective. If they do not redeem, they forfeit all payments made by

them under the terms of the contract. If they do not redeem, the seller retains all right, title and interest in all buildings or other improvements. If they do not redeem, the seller has the right to take possession of the land and premises.

The remedies are not deemed to be either cumulative or exclusive. Indeed, were they the former, a crushing penalty would devolve on the defaulting purchasers. Logic dictates that they cannot be the latter. It makes no sense to say that there is an exclusive remedy, where a number of them are provided. No part of the contract provides that any one is the exclusive remedy, or even that, taken collectively, they represent the field of possible remedies from which the seller is bound to choose. Indeed, were the contract to provide that one remedy is the exclusive remedy, the other language regarding remedies would prove to be more than superfluous—it would be meaningless. No independent rule of construction provides guidance as to choosing one of the many and deeming it exclusive.

We are not unmindful that the language of the contract should be interpreted most strongly against the party who caused the uncertainty to exist. Section 13-720, R.C.M.1947. See also *Kielmann v. Mogan* (1970), 156 Mont. 230, 235, 478 P.2d 275, 277. In the instant case, counsel for plaintiff-seller drafted the contract, which in turn was reviewed by the purchasers and their counsel. Thus, the contract should be construed most strongly against the seller. The default provision here under consideration lacks clarity and does not admit of a consistent interpretation favorable to anyone. To the extent that we are able to construe it more favorably for the purchasers, we do so: the remedies may not be taken to be cumulative. As we have pointed out, no one of them may be deemed exclusive, and, taken collectively, they may not be deemed the exclusive remedies from which the seller must take his choice.

To be determined is whether the manner in which plaintiff seeks relief by its complaint is consistent with its notice of default and demand for payment from defendants. That determination will be

made once it is discerned if the actions of plaintiff constitute an affirmation or disavowal of the contract.

It is clear that plaintiff relied on the contract for deed in noticing defendants' default and demanding moneys due and owing under the contract. Plaintiff has thus elected to affirm the contract and has bound itself to proceed consistently with that election. Just as a party may not repudiate a contract and later attempt to benefit himself by relying on it. *Adamczik v. McCauley* (1931) 89 Mont. 27, 35-36, 297 P. 486, 488, neither may he rely on a contract and later attempt to benefit himself by repudiating it. (Compare also *Scott v. Kyhl* (1963), 141 Mont. 523, 528, 379 P.2d 803, 805, wherein appellants elected their remedy of recission and thereby deprived themselves of a right of action for the recovery of the unpaid purchase money from the respondents; and *DeYoung v. Benepe* (1918), 55 Mont. 306, 312-13, 176 P. 609, 612, wherein defendant exercised his option to terminate the contract, which thereafter could not be made the basis of an action.) By instituting the proceedings, plaintiff elected to rely on the contract.

The seller here is not exercising his option to declare the contract at an end. If he were to do so, then he would be precluded from suing to recover the purchase price or payments past due, for he could not reclaim the property under a forfeiture clause and at the same time recover any unpaid portion of the sale price. See, e. g., *Edwards v. Muri* (1925), 73 Mont. 339, 351, 237 P. 209, 213. "The remedy of the vendor by way of cancellation of a contract and the continued liability of the purchaser for the purchase money, whether past due or not, are totally inconsistent . . ." *Adamczik v. McCauley*, 89 Mont. at 36, 297 P. at 488.

It should be pointed out that the seller, in the notice of default and demand for payment, did not declare that it was exercising its *option*, granted by the terms of the default clause, to "cancel and determine" the contract. The seller, in reliance on the contract, gave legally adequate notice regarding acceleration, and proceeded to inform the defaulting purchasers of its intent to sue to recover the moneys due, should the latter fail to cure their default.

The contract did not *mandate* the seller to "cancel and determine" the contract upon purchasers' default; rather, an *option* was given the seller, an option which the seller here chose not to exercise. The seller chose instead to inform purchasers of its intent to exercise another remedy, available at law or in equity and not precluded by the terms of the contract itself.

The language of the second part of the default clause could become operative only in the event that the seller elected to declare a forfeiture. " A forfeiture was not declared; hence [the seller] was free to treat the contract as in full force and recover [either] the amount of the installments then due," *Wandell v. Johnson*, 71 Mont. at 79, 227 P. at 61, or, by the terms of this contract, the total amount yet to be paid.

█ It is true if a vendor pursues one of his afforded remedies to a *conclusion* that he is thereby precluded from attempting to follow another. *J. M. Hamilton Co. v. Battson*, 99 Mont. 583, 591, 44 P.2d 1064, 1067, and cases cited. But merely making a demand for payment does not amount to a waiver of the right to pursue another remedy. (See *White v. Jewett* (1938), 106 Mont. 416, 421, 78 P.2d 85, 88, wherein the Court concluded that the making of a demand did not amount to a waiver of the right to pursue the remedy of cancellation of the contract.)

*Alexander v. Wingett* (1922), 63 Mont. 254, 206 P. 1088, sheds light on this problem. Distinguishing that case from an earlier Montana case, the Court took pains to point out that no clause in the *Alexander* contract asserted directly or by way of inference that the remedies of the vendor, as set forth in the contract, were exclusive, unlike the previous contract which provided that ". . . this contract shall be the only course of settlement thereunder." 63 Mont. at 258, 206 P. at 1089. The general rule was declared to be as follows:

"It is the general rule that the clause of forfeiture in a contract of the sale does not operate to make the contract void, when there is a default on the part of the vendee, so as to terminate the liability of the vendee, but *the vendor may elect whether to declare a forfei-*

*ture or rely upon the liability of the vendee as fixed by the contract, and sue for the purchase price.*" (Emphasis added.) 63 Mont. at 259, 206 P. at 1089.

Part of the rationale for such a rule is that the purchaser has no right to take advantage of his own default and claim that his liability was thereby terminated. *Id.*

It appears well settled that " '[w]hen either party to a contract for the sale of land has failed in his obligation, the other is entitled to the alternative remedy of specific performance in equity or damages at law.' " *Abdallah v. Abdallah* (3rd Cir. 1966), 359 F.2d 170, 175.

In *Security-First Nat'l Bank of Los Angeles v. Hauer* (1941), 47 Cal.App.2d 302, 306, 117 P.2d 952, 954, involving a conditional sales contract of agricultural land, the court stated:

"Upon the breach of any covenant by the vendees under a conditional sales agreement, plaintiffs are entitled to invoke either of two remedies: (1) to affirm the contract and sue for the balance of the purchase price, or (2) to terminate the contract, retain the money paid on the purchase price and repossess the property. [Citation omitted.] These remedies are inconsistent and the election of one precludes the right to exercise the other."

See also *Oconto Co. v. Bacon* (1923), 181 Wis. 538, 541, 195 N.W. 412, 413, in which the court determined that election of one of the remedies, i. e., to sue for the unpaid purchase money, to sue for specific performance of the contract, or to declare the contract at an end, waives the others.

As the lower court correctly noted, the contract contains no provision for money judgment in the event of default. At the same time, however, the contract does not provide that the remedy outlined in the default clause was to be exclusive. It is evident that:

"[w]hen a purchaser breaches a contract for the sale of realty, the seller has several remedies from which to choose. The seller may (1) seek recission of the contract [Citations omitted.]; (2) sue in equity for specific performance of the contract [Citations omitted.[; (3) sue in equity for forfeiture of the purchaser's rights [Citations

omitted.]; or (4) sue at law for damages occasioned by the breach [Citations omitted.]." *Duffin v. Patrick* (1975), 216 Kan. 81, 82, 530 P.2d 1230, 1231.

In the absence of a contractual provision expressly limiting the remedy or remedies available, a party may pursue any remedy which law or equity affords, as well as the remedy or remedies specified in the contract. As this Court stated in *J. M. Hamilton Co. v. Battson* (1935), 99 Mont. 583, 591, 44 P.2d 1064, 1067, 101 A.L.R. 520, 524, wherein the plaintiff sued to recover the balance due on a contract for the sale and purchase of real estate.

"Where a contract specifically provides that the remedies enumerated therein shall be the only course of settlement thereunder, a party to it is limited to the remedies provided therein. (*Wing v. Brasher*, 59 Mont. 10, 194 P. 1106.) *Although, when a contract provides for a definite and specific remedy in the case of breach, without any limitation making such enumerated remedy or remedies exclusive, a party is entitled to pursue the remedy specified in the contract, he may also pursue any other remedy which the law affords, in addition to those provided for in the contract. (Alexander v. Wingett, 63 Mont. 254, 206 P. 1088; Wandell v. Johnson 71 Mont. 73, 227 P. 58.)* . . . Therefore, the plaintiff was free, upon the default of the defendant, to bring an action for the recovery of the balance due on the purchase price . . ." (Emphasis added.)

See also *White v. Jewett*, 106 Mont. at 420, 78 P.2d at 87. As with the contract involved in *J. M. Hamilton Co.*, 99 Mont. at 591, 44 P.2d at 1067, 101 A.L.R. at 524, nowhere in the contract before us is it provided in specific terms that the remedies therein mentioned were deemed to be exclusive. the District Court thus erred in concluding that the terms of the contract made repossession and retention of payments and improvements the exclusive remedy available to plaintiff.

Additional support for this conclusion is found in the following, the last question put to William E. Kuster in his deposistion:

"Q. (Mr. Best) Did you at any time receive verbal [sic] or written

assuance or assurances of any kind from any member of the seller . that if you defaulted or if Wild Rivers as the corporation defaulted, they would be exclusively limited to the remedies of the contract? A. No.

To answer the second question posed by the parties, we turn to an Oregon case, *Renard v. Allen* (1964), 237 Or. 406, 391 P.2d 777. In *Renard*, the court was called upon to determine whether the plaintiff-vendor was entitled to a decree requiring the defendant-vendee, in default under a land sale contract, to specifically perform the contract. The contract there contained a provision that upon default of the vendee, the vendor, at his option, could declare the whole unpaid balance due. The plaintiff brought suit, throughout the trial of which he insisted he was seeking specific performance, i. e., a decree requiring the buyer to pay the balance of the contract price. The trial court believed, however, that the suit was one for foreclosure, and so awarded the plaintiff a decree for the amount of the unpaid installments and other obligations, but not for the balance of the principal. Plaintiff appealed, and the determination of the lower court was reversed with directions to enter a decree of specific performance with the provision that if the money decree was not satisfied within a certain time, the property was to be sold and the net proceeds applied to the satisfaction of the money decree.

In *Renard*, the plaintiff prayed that, if the sum demanded were not paid within sixty days or other reasonable time, the property to be sold and the proceeds applied to the sum due the plaintiff. The court agreed with the plaintiff that a prayer for sale is not inconsistent with the remedy of specific performance, and noted that "[m]any other jurisdictions have approved of the coupling of a decree of specific performance with a provision for a sale if the money decree is not paid." *Renard v. Allen*, 237 Or. at 411, 391 P.2d at 779.

Plaintiff in the instant case has not made such a request in his prayer for relief. The issue, the second to be determined, is before us, however, as one advanced by the parties in their statement of agreed-upon issues.

■ Arguing that issue, defendants claim that to allow seller to pursue his suit to obtain a money judgment would result in the following: that plaintiff will have clear title to the property, will be able to recover the full purchase price of the property, *and* will be able to recover the full purchase price again in the form of a personal deficiency judgment against the defendants after a sale of the property. This is certainly not the case. Plaintiff may not receive the purchase price from defendants and then refuse to deliver the deed to the property for which defendants will have paid. Furthermore, plaintiff may not recover the remainder of the purchase price and subsequently seek to recover again the same amount for the same property in a suit for deficiency judgment.

In an attempt to block such a fanciful triple coup, defendants invoke section 93-6008, R.C.M.1947, captioned *Deficiency judgment not allowed on foreclosure of purchase price mortgage.* The statute reads as follows:

"Upon the foreclosure of any mortgage . . . for the balance of the purchase price of such real property, the mortgagee shall not be entitled to a deficiency judgment on account of such mortgage or note or obligation secured by the same."

In invoking this statute, defendants contend that a contract for deed, in effect, is a purchase price mortgage. They further argue that public policy dictates that the statute be read so as to apply to "all purchase money situations where a deficiency could be obtained". Such contentions ignore the fact that a contract for deed and a purchase money mortgage are not one and the same thing with two different names. They are two distinct legal creatures.

"The land sale contract, in contrast to a mortgage or trust deed, does not secure a loan or forbear the payment of money. Rather, the land contract is an installment sales contract, providing for periodic payment of the purchase price, often in monthly installments. Unlike mortgages . . ., the land sale contract seller retains legal title to the realty to secure full and final payment." Comment, *Forfeiture: The Anomaly of the Land Sale Contract,* 41 Alb. L.Rev. 71, 73-74 (1977).

Because we recognize that the two are distinct, we adopt the reasoning which the Oregon Supreme Court advanced in *Renard* when confronted with a problem similar to the one at bar. Under consideration, *inter alia*, in *Renard*, 237 Or. at 412, 391 P.2d at 780, was an Oregon statute which expressly prohibits deficiency judgments in the foreclosure of purchase money mortgages, the pertinent portion of which is virtually identical to that found in the Montana codes.

Or.Rev.Stat. § 88.070 provided, in part, that "the mortgagee shall not be entitled to a deficiency judgment on account of the mortgage or note or obligation secured by the same."

That statute and section 93-6008, R.C.M.1947, refer expressly to mortgages and mortgage foreclosures.

As we have explained above, and as the Oregon court intimates, *Renard v. Allen*, 237 Or. at 412, 391 P.2d at 780, land sale contracts, or contracts for deed as they are commonly called in this state, and note mortgage transactions differ from one another. Therefore, "[t]he statutory prohibition against deficiency judgments in mortgage foreclosures is not a prohibition against awarding specific performance by granting a money decree and further providing that in the event the decree is not paid the property shall be sold and the proceeds applied in satisfaction of the money decree." *Renard v. Allen*, 237 Or. at 413, 391 P.2d at 780, and cases subsequently cited.

We concur in the declaration of the Oregon court, to wit:

"There is nothing inequitable, i.e., 'unfair,' about such procedure. By entering a decree for specific performance the court has transferred an obligation assumed by contract into a judgment. If the purchaser does not pay this obligation, it is reasonable that the property should be sold; . . . ." *Renard v. Allen*, 237 Or. at 416, 391 P.2d at 782.

It is not unfair or inequitable because specific performance of such a contract is granted in favor of the seller as freely as in favor of the purchaser, although the relief actually obtained is only a recovery of the money. *Tombari v. Griepp* (1960), 55 Wash.2d

771, 775-77, 350 P.2d 452, 455-56, and the numerous authorities subsequently cited.

As II Restatement of Contracts § 360, Comment c, states:

"Before conveyance has been made by the vendor his remedy in damages is not an adequate one. He can not get judgment for the full price, because he still has the land. His damages are usually measured by the contract price less the value of the land retained; but the land is a commodity that has no established market value, and the vendor may not be able to prove what his real harm will be. Even if he can make this proof, the land may not be immediately convertible into money, and he is deprived of the power to make new investments. Prior to getting a judgment, the existence of the contract, even though broken by the vendee, operates as a clog on salability, so that it may not be possible to find a purchaser at any fair price. In addition, the fact that specific performance is available to the vendee is of some weight, because of the rule as to mutuality of remedy (see § 372(2))."

█ The prayer to plaintiff's amended complaint is as follows:

"WHEREFORE, Plaintiffs pray judgment against Defendants as follows:

"For Count I.

"1. The sum of $212,000 principal with interest thereon at the rate of eight and one-half percent (8½%) from December 1, 1973 to the date of judgment herein;

"2. For the sum of $58,000 principal together with interest thereon at the rate of seven and one-half percent (7½%) per annum from and after November 1, 1973 to the date of judgment herein;

"3. For the costs incurred in the prosecution of the suit herein;

"4. For such other and further relief as to this Court may seem meet and equitable under the circumstances;

"For Count II.

"1. For the sum of $78,334.26 principal with interest thereon at the rate of interest specified in the contract for said sum from and after the 1st day of January, 1976 the date of judgment herein;.

"2. For the costs incurred in the prosectuion [sic] of the suit herein;

"3. For such other and further relief as to this Court may seem meet and equitable under the circumstances;"

It may be that plaintiff seeks damages at law; it may be that specific performance is sought. Of course, a plaintiff who is seeking to enforce the contract and recover the balance due on the purchase price must plead and prove performance on his part. *J. M. Hamilton Co. v. Battson*, 99 Mont. at 592, 44 P.2d at 1067-68. Plaintiff in the instant case has yet to plead its performance of the contract, but amendment to the pleadings will accomplish this. Proof of performance was not made because the case was submitted on an agreed statement of facts; but those, too, may be amended to conform to this requirement.

There is no request for specific performance, as such. The prayer appears to be one requesting damages for breach of contract. A request for a money judgment for the balance of the purchase price which may be awarded in an action at law has been deemed identical to a decree of specific performance, which requires the buyer to pay the balance of the purchase price. See *Renard v. Allen*, 237 Or. at 408, 391 P.2d at 778, relying on 3 Casner, *American Law of Property* 176, § 11.68 (1952). That being so, once the buyers have paid the money judgment, the seller must convey the title to the property. Such would be required if the decree were of specific performance; and since the money judgment has been deemed identical to a decree for specific performance, the money judgment carries with it the same requirement that the seller perform.

There being no question of fact in this case and plaintiff being entitled to judgment as a matter of law, the judgment is reversed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY and SHEA concur.

MR. JUSTICE SHEEHY dissenting:

I dissent to the foregoing opinion. I fear that much of what is said

therein may lead the District Court in any retrial into egregious error.

This is a case where the District Court granted a summary judgment in favor of the defendants. Therefore, the facts before us are either admitted, or there is no issue of fact. It is important to bear in mind that posture of this appeal.

In the first place, the parties entered into a contract for deed which contained in paragraph 9 a default clause. The pertinent portion of that default clause provided as follows:

"In case of the failure of the said Purchasers to make any of the payments of principal or interest . . . then the whole of said payments and interest shall, at the election of said Seller, become immediately due and payable . . . and this Contract shall, at the option of Seller, be forfeited and determined by giving to the Purchasers sixty (60) days' notice, in writing, of the intention of the Seller to cancel and determine this Contract . . . should the said Purchasers make good such default within said 60-day period, then their rights under this Contract shall be fully reinstated, and said acceleration of said payments shall fail; however, should said Purchasers fail to make good any such default within said 60-day period, said acceleration shall be good and this Contract may be terminated by the Sellers as aforesaid."

The purchasers having defaulted in their payments pursuant to said provisions, the seller *accelerated* the remaining payments due to make the whole of said payments and interest immediately due and payable. It is clear the seller may not accelerate unpaid payments under a purchase contract such as this unless there is in the contract an agreement to the effect that such debt can be accelerated as to its maturity. *Rader v. Taylor* (1958), 134 Mont. 419, 428, 333 P.2d 480, 486, and those cases cited therein.

In serving their written notice of default, the seller following the contract, told the purchasers:

"As a consequence of said default, the undersigned, pursuant to paragraph 9 of said contract for deed have elected to declare the full balance payable and do hereby declare the full balance due

under the terms of said contract immediately due and payable as of this date."

Thus, under the terms of the contract, the seller had an option: it could if it wished, accelerate the payments by giving the notice that was provided in paragraph 9 of the contract. It was left to the seller's option. It opted, in accordance with the contract to accelerate the maturity of the debt. By doing so, it set in motion certain legal effects which cannot now be reversed.

The cases cited in the foregoing opinion, and other cases, are sufficient authority for the following statements respecting the legal relationships of the parties hereto when default occurs: the seller had the right to choose between the legal relations that would affect the parties after such a default—they could choose between a contract and no contract. The first is affirmance and the latter is disaffirmance. A choice of one precludes the other. The two are mutually exclusive. They both cannot exist at the same time. One is yes, and the other is no. There is no possible co-existence. It is a case of having substantive rights under a contract, or having substantive rights outside of the contract. The seller had the option, and once having exercised it, it cannot resort to the other choice.

There is more involved here than merely an election of remedies. The seller has made an election of substantive rights. An election of substantive rights goes not to the form, but to the substance of the rights selected. See 25 Am.Jur.2d *Election of Remedies* § 7.

When, as here, the purchasers, having been served notice under the contract, failed to make the required payments in default within the 60-day period, the contract for deed became dead.

"The failure to pay the installment due September 15, 1947, or any part thereof on or before 30 days from and after September 22, 1947, on which date the vendees were served with the notice terminating and cancelling the contract for deed, forfeited all defendants' rights thereunder and made of such contract a dead instrument and rendered the continued occupation of the premises a trespass." *Light v. Zeiter* (1950), 124 Mont. 67, 71, 219 P.2d 295, 297.

The contract now being dead, the seller may not sue upon it as though it were alive; yet that is precisely what it seeks to do under counts 1 and 2 of its amended complaint.

Let us first look at count 2 of the amended complaint. It is the easiest to dispose of. The seller alleged in it that defendants are "presently in default of said contract" and owed plaintiff payments to date amounting to $78,334.26. That could only be true if the contract were alive. There are no ongoing payments due from the purchasers to the seller if the contract is dead. Therefore, count 2 affords no basis upon which the District Court could have afforded relief to plaintiff as seller under the contract.

Count 1 seeks a slightly different relief. There, the prayer is for the full amount of the unpaid purchase price plus interest, in other words, the accelerated debt. There is no tender of deed to the plaintiff nor offer to tender such deed. Although it may be "fanciful" for us to assume the District Court would not order a deed if it rendered its judgment against purchasers for the full amount of the purchase price, yet it cannot be escaped that count 1 is asking the District Court to enforce the terms of a contract that is legally dead by granting judgment for the whole of the unpaid installments. Even if a deed were ordered, the real estate would be subject to execution on the judgment, with the possibility of a deficiency judgment after sheriff's sale.

The District Court recognized the situation when in its findings, it said:

"7. The contract for deed contains no provision for money judgments, and since the provisions in terms of the contract are to be construed against the plaintiffs as drafters of the contract, the relief requested in plaintiffs amended complaint was not within the understanding and contemplation of the parties.

"8. A money judgment for the amount of unpaid installments to date, plus a possible subsequent cancellation and termination of the contract by plaintiffs would violate the contract's express condition and forfeiture of payments made plus repossession of the property would constitute full satisfaction and full liquidation of all damages sustained by the plaintiffs."

This is not to say that seller such as here involved is not given a choice of several remedies when default occurs. In this case, the seller could have (1) sued for breach of contract; (2) sued for specific performance of the contract; or, (3) served the notice and forfeit the contract as it did. Once having decided to accelerate the maturity of the unpaid installments, it set in motion the chain of legal consequences that cancelled the contract so that it became a dead instrument. We cannot undo what the seller effectuated.

The language in the default clause of the contract prepared by the seller brought about the result found by District Court. Most default clauses with which I am familiar provide that the first notice to the defaulting purchasers shall require only the payment of the installments already due and unpaid. Only when the purchasers fail to make up those late payments is the seller given the further right to accelerate the whole of the unmatured debt, usually by a further written notice. That kind of default provision allows the seller to keep its choice of remedies until it has determined whether it will forfeit and terminate the contract, or pursue damages for the breach. Moreover, wise drafting of such clauses will dictate the inclusion of a proviso that the seller reserves the right to pursue any legal or equitable remedy, including specific performance. None of those saving clauses appear in the contract before us here.

It appears to me that the District Court was correct and accordingly, I would affirm its summary judgment.

## ORDER

PER CURIAM:

This Court in the above entitled cause issued an opinion on December 18, 1978. Appellants filed a Petition for Rehearing the cause on December 28, 1978, and that petition was granted on January 29, 1979, at which time the case was set for argument on March 22, 1979.

The case having been reargued and fully considered by this

Court, we find that the opinion of this Court dated December 18, 1978, remains as decided by the majority of this Court.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY and HARRISON concur.

MR. JUSTICE SHEEHY would reverse the decision.