DA 14-0751

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 185

FILED

June 30 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0751

BOTTRELL FAMILY INVESTMENTS
LIMITED PARTNERSHIP,

     Plaintiff and Appellant,

  v.

DIVERSIFIED FINANCIAL, INC.,
STEPHEN A. ZABAWA, and
JASON BLAIR,

     Defendants and Appellees.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 14-0052
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Kelly J. Varnes, Hendrickson Law Firm, P.C., Billings, Montana

          Kristine K. Kroenke, Gregory T. Spalj, Fabyankske, Westra, Hart &
Thomson, P.A., Minneapolis, Minnesota

     For Appellees:

          Rodd A. Hamman, Alex W. Hamman, Calton Hamman & Wolff, P.C.,
Billings, Montana

Submitted on Briefs:  April 22, 2015
Decided:  June 30, 2015

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Bottrell Family Investments filed this breach of contract action in the Thirteenth Judicial District Court, Yellowstone County, seeking damages and a declaratory judgment against Diversified Financial, Inc., Stephen A. Zabawa, and Jason Blair (collectively, "Defendants"). After both Bottrell and Defendants moved for summary judgment, the District Court entered judgment in Defendants' favor. Bottrell appeals. The issues on appeal are as follows:

1. *Whether election of remedies doctrine bars Bottrell's pursuit of damages;*

2. *Whether laches bars Bottrell's action.*

¶2 We reverse and remand for the District Court to enter judgment in Bottrell's favor and to calculate damages.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In 2006, Defendants were developing an integrated software program called Version 1 that would allow auto dealerships to initiate, complete, and account for vehicle sales. Additionally, Defendants had developed a program called Red Flag that trained auto dealership employees. Defendants approached Bottrell about investing in their enterprise. In early 2007, the parties entered into an Operating Agreement to form Dealerspan, LLC, which would own and operate Version 1 and Red Flag. The Operating Agreement provided Bottrell a fifty percent share of the company, with the remaining fifty percent split among Defendants. The Operating Agreement included a doomsday election to buy or sell clause. Under this clause, a partner could inform another partner

2

that, within ninety days, the other partner must elect either to sell his interests or to buy the invoking partner's interests in the company for a specified price. The electing partner's choice would form a binding contract.

¶4    In the summer of 2008, Bottrell and Defendants came to loggerheads about the direction that Dealerspan should take. Defendants wanted to seek additional investment to develop Version 1 for market, whereas Bottrell wanted to liquidate Dealerspan. On August 13, 2008, Defendants notified Bottrell of a doomsday election to buy or sell for $2.3 million. Bottrell elected to buy Defendants' interests in Dealerspan for that amount. Defendants did not want to sell their interests, however, so the parties bargained for and entered into a new contract ("the Contract"). The Contract provided that Defendants would buy Bottrell's interests in Dealerspan for $2.3 million, plus interest, and would reimburse Bottrell for any advances Bottrell would make to Dealerspan between the date of the Contract's execution and November 14, 2008, the Contract's closing date. The Contract contained language specifying what would happen in the event that Defendants failed to purchase Bottrell's interests by the closing date: chiefly, Defendants would forfeit their own fifty percent share in the business to Bottrell "in addition to other remedies."

¶5    Defendants failed to close and accordingly forfeited their fifty percent share to Bottrell, with Bottrell assuming full control of the company. After the forfeiture, Bottrell solicited offers for Dealerspan, but never sold the company. At one point, Bottrell entered into a contract with defendant Zabawa granting him the power to sell Dealerspan

to a third party for $5 million, but Zabawa was unable to reach terms with the third party. Bottrell determined that Dealerspan was no longer worth the cost of operations, sold some of Dealerspan's physical assets, and transferred employees working on Version 1 to other subsidiaries. Bottrell continued to collect income from Red Flag.

¶6 On January 14, 2014, Bottrell commenced this action, seeking damages under the August 2008 contract, as well as a declaratory judgment that the Contract is still effective and that Defendants accordingly owe Bottrell $2.3 million, plus $628,000 in advances, plus interest. In June 2014, both parties moved for summary judgment. Defendants argued that the doctrines of election of remedies and laches barred Bottrell's suit. Bottrell argued that it was entitled to judgment as a matter of law that Defendants breached the Contract and that, as of June 2014, Defendants owed Bottrell $3,480,728.70 in damages.

¶7 In a terse opinion and order entered in October 2014, the District Court awarded summary judgment to Defendants. Likening Bottrell's suit to an attempt to "have [its] cake and eat it too," the District Court determined that, by accepting Defendant's forfeited interests in Dealerspan, Bottrell elected to pursue the remedy of forfeiture and rescinded the Contract. Consequently, Bottrell could not seek to enforce the Contract's payment provisions. The District Court also opined that the doctrine of laches would bar Bottrell's suit. Bottrell filed a timely appeal.

4

**STANDARDS OF REVIEW**

¶8 We review entries of summary judgment de novo. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704. Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Albert*, ¶ 15. We review a district court's interpretation of a contract for correctness. *Kaufman Bros. v. Home Value Stores, Inc.*, 2012 MT 121, ¶ 6, 365 Mont. 196, 279 P.3d 157.

**DISCUSSION**

¶9 *1. Whether election of remedies doctrine bars Bottrell's pursuit of damages.*

¶10 The parties do not dispute that the Contract is binding, or that Defendants breached it. They disagree, however, about whether, under the terms of the Contract and the applicable law, Defendants' breach entitles Bottrell to institute the present action for damages and declaratory judgment.

¶11 "The fundamental tenet of modern contract law is freedom of contract; parties are free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws." *Winter v. State Farm Mut. Auto. Ins. Co.*, 2014 MT 168, ¶ 26, 375 Mont. 351, 328 P.3d 665 (quoting *Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 20, 318 Mont. 103, 79 P.3d 250). In construing a contract, we attempt to discern and give effect to the mutual intent of the parties as reflected in the contract's terms. Sections 28-3-301, -401, MCA.

5

¶12 The Contract states that Defendants are "jointly and severally liable (personally) to perform all the terms and conditions of this Agreement including the payment of all sums hereunder including but not limited to the sum of $2.3 million plus any advances." The Contract then goes on to discuss Bottrell's remedies in case of Defendants' breach.

6. If [Diversified], Zabawa, and Blair fail to close the transaction on or before the Closing Date, then, in addition to other remedies, they agree, along with [Diversified], that their interest, free and clear of all claims or liens of any nature, is forfeited that they and/or Diversified Financial Incorporated shall have in Dealerspan, LLC and shall have no further rights, interests or title to any of the management or ownership of Dealerspan, LLC in any fashion. They waive any rights under the Operating Agreement, including the right to be bought out and this Agreement shall then act as their resignation from Dealerspan;

7. [Diversified], Zabawa, and Blair acknowledge that, by entering into this agreement, [Bottrell] is compromising its rights significantly. Accordingly, [Diversified], Zabawa, and Blair agree that, in the event Diversified, Zabawa, and Blair are unable to pay the purchase price by the Closing Date, then they shall forfeit and assign their interest in Dealerspan, LLC and [Bottrell] shall have the sole right to liquidate Dealerspan, LLC in any manner that it sees fit. [Diversified], Zabawa and Blair waive any rights they may have against [Bottrell] regarding the liquidation of Dealerspan, LLC. More specifically, [Diversified], Zabawa, and Blair waive any right to require [Bottrell]:

a. Except as provided herein, to give notice of the terms, time, and place of any public or private sale of assets belonging to Dealerspan, LLC, in any specific manner or to comply with any provisions of the Uniform Commercial Code or any provisions of the Montana Code Annotated that relate to liquidation of limited liability companies;

b. To delay the liquidation or sale of assets of Dealerspan, LLC, beyond any date specifically agreed upon by [Bottrell];

c. To sell or liquidate the assets of Dealerspan, LLC, for any minimum price or value;

6

d. To pursue any other remedy within [Bottrell]'s power such as marshalling; or

e. To commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

[Diversified], Zabawa, and Blair also waive any and all rights or defenses arising by reason of any "one action" or "anti-deficiency" law or any other law which may prevent [Bottrell] from bringing any action, including a claim for deficiency, against [Diversified], Zabawa, and/or Blair, after [Bottrell]'s liquidation of Dealerspan, LLC. [Diversified], Blair, and Zabawa specifically acknowledge and agree that these waivers are fair and reasonable given the nature of the business of Dealerspan, LLC, and the position that [Bottrell] shall be left in should [Diversified], Zabawa, and/or Blair fail to fund the purchase price by the Closing Date. . . .

While the Contract's remedies language is clumsy, we discern that it provides Bottrell three sequential remedies in case of Defendants' breach. First, Bottrell may accept Defendants' forfeiture of all their interests and rights in Dealerspan. Second, Bottrell may liquidate Dealerspan. Third, if liquidation does not place Bottrell in the position it would have been had Defendants performed, Bottrell may sue Defendants for deficiency—the difference between the amount recovered through the forfeiture and liquidation and the amount owed under the Contract.

¶13    After Defendants breached, Bottrell accepted Defendants' forfeiture. Bottrell has admitted, however, that it did not liquidate Dealerspan, and it is not currently seeking a deficiency judgment. Rather, Bottrell seeks to collect the amount owed under the Contract.

¶14    Defendants essentially argue that the remedies outlined by the Contract (forfeiture, liquidation, and deficiency) are the exclusive remedies available to Bottrell, so Bottrell

7

cannot pursue different remedies. In *Glacier Campground v. Wild Rivers, Inc.*, 182 Mont. 389, 597 P.2d 689 (1978), we similarly were tasked with discerning the effect of a contract's remedies section on a plaintiff's ability to pursue a remedy not specifically provided by the contract. *Glacier Campground*, 182 Mont. at 394, 597 P.2d at 692. That case involved land purchasers who defaulted but argued that contractual language outlining the seller's ability to repossess the property and retain improvements and previous payments impliedly precluded the seller from pursuing an action for contract damages. *Glacier Campground*, 182 Mont. at 391-92, 597 P.2d at 690-91. We disagreed, stating, "In the absence of a contractual provision expressly limiting the remedy or remedies available, a party may pursue any remedy which law or equity affords, as well as the remedy or remedies specified in the contract." *Glacier Campground*, 182 Mont. at 403, 597 P.2d at 696.

¶15 Here, there is no provision in the Contract expressly limiting the remedies available to Bottrell. In fact, the Contract states that the remedies it outlines are "in addition to other remedies." Accordingly, the Contract does not limit Bottrell to the remedies provided in the Contract.

¶16 Defendants next argue that, even if the Contract remedies are not the exclusive remedies from which Bottrell may choose, once Bottrell does choose the Contract remedies, it cannot pursue any others. Defendants distinguish the case on appeal from *Glacier Campground* on the ground that, in *Glacier Campground*, the plaintiff never

8

elected a remedy before bringing suit, whereas in this case, Bottrell elected to accept Defendants' forfeiture. Indeed, in *Glacier Campground*, we noted,

> The seller here is not exercising his option to declare the contract at an end. If he were to do so, then he would be precluded from suing to recover the purchase price or payments past due, for he could not reclaim the property under a forfeiture clause and at the same time recover any unpaid portion of the sale price.

*Glacier Campground*, 182 Mont. at 400, 597 P.2d at 695.

¶17 Defendants' argument does not appear to rely on any specific language in the contract. Rather, the argument relies on the doctrine of election of remedies. *See* 3 Dan B. Dobbs, *Law of Remedies* § 12.7(6), at 185 (2nd ed. 1992) ("The traditional doctrine [of election of remedies] is to be distinguished from the question whether a remedy provided by the contract itself is the exclusive remedy which bars others."). Election of remedies doctrine prevents a plaintiff that has elected a remedy from asserting a subsequent, inconsistent remedy. The doctrine of election of remedies requires "(1) the existence of two or more remedies, (2) an inconsistency between such remedies, and (3) a choice of one of them." *Kaufman Bros.*, ¶ 15; *Frazer Educ. Ass'n, MEA/FEA v. Bd. of Trs.,Valley Cnty. Elementary Sch. Dist. No. 2*, 256 Mont. 223, 227, 846 P.2d 267, 270 (1993).

¶18 Defendants argue that accepting forfeiture is inherently inconsistent with a claim for money damages.[1] To support this proposition, Defendants cite a number of cases in which a plaintiff's recovery of a defendant's forfeited property was held to preclude the plaintiff's later pursuit of contract damages. *See e.g.*, *Kaufman Bros*, ¶ 20; *Edwards v.*

---

[1] We note that the Defendants have not argued that the forfeiture clause represents a liquidated damages clause. *See* Dobbs, supra, § 12.9(5).

*Muri*, 73 Mont. 339, 351, 237 P. 209, 213 (1925); s*ee also Glacier Campground*, 182 Mont. at 400, 597 P.2d at 695 (noting, as quoted above, that if the seller reclaimed forfeited property, he could not sue for the purchase price).

¶19     As we have explained about election of remedies doctrine,

> [T]he so-called "inconsistency of remedies" is not in reality an inconsistency between the remedies themselves, but must be taken to mean that a certain state of facts relied on as the basis of a certain remedy is inconsistent with, and repugnant to, another certain state of facts relied on as the basis of another remedy.  For one proceeding to be a bar to another for inconsistency, the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other.

*Frazer Educ. Ass'n*, 256 Mont. at 229, 846 P.2d at 271 (1993) (quoting 25 *Am. Jur. 2d Election of Remedies* § 11 (1966)).  "To determine whether remedies are inconsistent, the court looks at whether one theory alleges what the other denies or whether one theory is repugnant to the other." 25 *Am. Jur. 2d Election of Remedies* § 20 (2014).

¶20     There is a significant difference between the state of facts present in the cases that Defendants cite and the facts in this case.  In the cases that Defendants cite, the subject of the contract also was the thing that was forfeited.  For instance, in *Kaufman Bros.*, the seller of land retook possession of that land after the purchaser's breach.  *Kaufman Bros.*, ¶ 3.  By retaking control of the subject of a contract, a seller may be thought of as returning herself to the position she was in before the contract was created—in effect, negating the contract.  This negation conflicts with pursuing damages under a contract because the pursuit of contract impliedly affirms the contract.  Thus, in *Kaufman Bros.*, because one remedy negated the contract while the other affirmed it, we determined that

10

"[t]he remedy of the [seller] by way of cancellation of the contract and the continued liability of the purchaser for the purchase money are totally inconsistent," *Kaufman Bros.*, ¶ 17 (quoting *Adamczik v. McCauley*, 89 Mont. 27, 36, 297 P. 486, 488 (1931)), and barred the seller's pursuit of damages.

¶21 Here, by contrast, the Contract's subject was Bottrell's interests in Dealerspan, but the property that was forfeited was *Defendants*' interests in Dealerspan. Defendants' forfeiture of their interests in Dealerspan did not return the parties to the positions they were in before executing the Contract. In other words, the forfeiture in this case did not negate the Contract. As Defendants themselves recognized in March 2009, after the forfeiture occurred, the Contract remained "in full force and effect." The election of remedies cases Defendants cite simply do not stand for the proposition that Bottrell could not accept Defendants' forfeited interests and then pursue additional remedies. Indeed, the Contract specifically provides for additional remedies beyond forfeiture.

¶22 The Contract does not provide, however, that Bottrell should be placed in a better position through Defendants' breach than through Defendants' performance. The successive remedies that the Contract outlines are designed to make Bottrell whole but no more. Under the Contract, if Bottrell accepts Defendant's forfeited interests and liquidates Dealerspan, it can then sue for deficiency—in other words, the amount left under the purchase price of the Contract. This would not provide Bottrell a double recovery. *See also* § 27-1-302, MCA ("Damages in all cases must be reasonable."); *McEwen v. MCR, LLC*, 2012 MT 319, ¶¶ 65-66, 362 Mont. 38, 291 P.3d 1253

11

(explaining that damages for breach of contract should not lead to a double recovery or to placing a party in a better position than if the contract had been performed as bargained).

¶23 Thus, while we discern no basis in Defendants' arguments on the Contract or the law for barring Bottrell's pursuit of damages, Bottrell may recover only those damages that resolve the difference between the benefit Bottrell derived from Defendants' breach (including the value of Defendants' forfeited interests, profits from Red Flag, and profits from selling Dealerspan's physical assets) and the contract purchase price.

¶24 *2. Whether laches bars Bottrell's action.*

¶25 Defendants also assert that laches bars the current action. A party asserting the defense of laches bears the burden of showing that it was prejudiced by the other party's lack of diligence in asserting its rights. *Dollar Plus Stores, Inc. v. R-Montana Assocs., L.P.*, 2009 MT 164, ¶ 31, 350 Mont. 476, 209 P.3d 216. Bottrell waited over five years from the breach of contract in 2008 to file this action in 2014. The statute of limitations for a breach of contract action is eight years. Section 27-2-202(1), MCA. When a party files suit within the applicable period of limitations, we apply the doctrine of laches only in extraordinary circumstances. *McGregor v. Mommer*, 220 Mont. 98, 107, 714 P.2d 536, 542 (1986).

¶26 Defendants argue that Bottrell's delay in filing this action prejudiced them because Dealerspan is worth substantially less today than it was at the time of the breach. But Bottrell's complaint does not request specific performance of the Contract, under which, for the purchase price, Bottrell would be entitled to Dealerspan as it existed in 2008 or

2009. Rather, Bottrell's complaint seeks damages resulting from Defendants' breach. Defendants have not submitted evidence showing that Bottrell's delay in filing this action changed the nature of those damages other than perhaps to increase the amount of interest that may be awarded. Accordingly, Defendants have not shown extraordinary circumstances or prejudice sufficient to justify the application of laches.

## CONCLUSION

¶27 We reverse the District Court's award of summary judgment in favor of Defendants and remand for entry of judgment in favor of Bottrell. We also remand for a determination of damages, if any, that are consistent with this opinion.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT